Argued and submitted February 29, 1984, affirmed February 6, reconsideration denied March 8, petition for review denied April 2, 1985 (299 Or 32)

## STATE OF OREGON,
*Respondent,*

*v.*

## GLEN EUGENE WEILAND,
*Appellant.*

(C80-10-33435, C83-02-30893; CA A29356, A29357)
(Cases Consolidated)

695 P2d 85

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Defendant appeals his conviction for attempting to use a dangerous weapon, ORS 166.220, and for two counts of possession of a controlled substance, contending that the trial court erred in failing to suppress evidence seized from his person following an allegedly illegal stop and frisk. We affirm.

On February 18, 1978, at approximately 5 p.m., a Portland police dispatcher notified all patrol units that a certain described woman was using and attempting to sell a stolen VISA card at the Ace High Tavern. Within a few minutes, Officers Taylor, Brose and Sinnot arrived at the scene in separate vehicles. Taylor observed the suspect and defendant conversing in front of the tavern, approached the two and asked for identification. Defendant produced his driver's license and, as Taylor handed it to Brose for a records check, the suspect handed the stolen credit card to a woman bystander. Taylor seized the card and arrested both women.

Brose did not see the arrests, because he was in his patrol car running a computer check on defendant, which revealed that he was on probation for possession of a controlled substance and that there were no outstanding warrants for his arrest. After the two women were arrested, defendant began to walk with an unnatural shuffle-step with his hands in his pockets, away from Taylor and toward Brose's car. When defendant arrived alongside the car, Brose got out, told defendant to get his hands out of his jacket pockets, and frisked him. When Brose felt the outlines of a gun in a pocket, defendant immediately tried to grab the weapon. A struggle ensued, with Brose attempting to keep defendant's hand out of the pocket containing the gun. Brose eventually applied a choke hold and was assisted by the other two officers in subduing defendant, who was then arrested for being an ex-convict in possession of a firearm and for unlawful possession of a weapon.

A subsequent search of defendant's pockets revealed a locking-blade knife, a spoon, two syringes, 12 clear plastic baggies containing marijuana, 2 loose "CIBA-34" Ritalin tablets, a container with several Ritalin tablets, a container with suspected raw opium and a Sucrets box containing 17 clear plastic "bindles" of white powder. He was eventually charged with and convicted of carrying a dangerous weapon with

intent to use and possession of heroin, Ritalin and more than one ounce of marijuana.

■ Defendant first contends that the trial court erred in refusing to suppress the pistol and various drugs seized from his person, because he was stopped without reasonable suspicion that he had committed a crime and was frisked without grounds for a reasonable belief that he was armed and dangerous, in violation of ORS 131.615 to 131.625. Even assuming that the stop and frisk were unlawful, however, we conclude that the court did not err in refusing to suppress the evidence. In *State v. Gaffney,* 36 Or App 105, 108-09, 583 P2d 582 (1978), *rev den* 285 Or 195 (1979), we held that the exclusionary rule does not apply to evidence obtained following an illegal stop when the defendant, after the stop, had committed a new crime justifying his arrest. The defendant in *Gaffney* had shoved an officer who attempted to frisk him, giving rise to charges of criminal mischief and harassment. We said:

> "* * * The purposes underlying the exclusionary rule would not be well served by the exclusion of evidence of independent crimes directed at officers who illegally stop, frisk, arrest or search. Moreover, the results of such an extension of the exclusionary rule would be intolerable. A person who correctly felt that he had been illegally stopped, for example, could respond with unlimited violence and under an exclusionary rule be immunized from criminal responsibility for any action taken after the stop. That cannot be an appropriate rule. * * *"

*See also State v. Burger,* 55 Or App 712, 639 P2d 706 (1982); *State v. Rodriguez,* 37 Or App 355, 587 P2d 487 (1978), *rev den* 285 Or 319 (1979). Here, defendant's repeated attempts to gain access to his pocket after Brose had felt a gun in it gave rise to probable cause to believe that defendant was armed and intended to use the weapon against Brose, justifying the arrest for that reason after the purportedly unlawful stop. Accordingly, the gun seized incident to his arrest was properly admitted.

■ ■ The remaining question is whether the search of defendant's person and the containers seized therefrom exceeded the permissible bounds of a search incident to arrest as enunciated in *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982), and *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983). In *Caraher,* the court held that a search incident to arrest is

justified if it is relevant to the crime for which the defendant was arrested, or if it is performed for the protection of the officer or for the purpose of preventing the destruction of evidence. 293 Or at 759. It must also be reasonable as to time, space and intensity. 293 Or at 758-59.

■■ Defendant was arrested for being an ex-convict in possession of a firearm and for unlawful possession of a firearm. However, the officers had probable cause to arrest him for the crime with which he was charged and for which he was ultimately convicted. It matters not that the officers articulated the wrong reason for the arrest; the arrest was lawful. *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969). Brose testified regarding the reason for the search following defendant's arrest:

> "Basically he is going to sit behind me while we go to the police station. He can slip the handcuffs down in front of his knees. If he has any more weapons he could shoot me in the back on the way to the police shop. * * *"

Having found defendant to be in possession unlawfully of a pistol that he intended to use, the officer was entitled to make a search of defendant's clothing, both as an incident to the arrest and for his own protection.

■ In the course of searching for other weapons, the officers uncovered several clear plastic bags that, upon external inspection, revealed a substantial quantity of marijuana. They also uncovered two loose Ritalin pills, the nature of which was plainly evidenced by their "CIBA-34" inscription. After discovering those drugs, the officers had probable cause to arrest defendant for possession of controlled substances. In performing a search incident to the arrest for that charge, they were permitted to seize and open the closed containers, including the Sucrets box. In *State v. Caraher, supra,* the court upheld the warrantless seizure of evidence from Caraher's purse, because "the arrest was for possession of a controlled substance [and] it was reasonable to believe that defendant would carry contraband in her purse." 293 Or at 759. In *State v. Lowry, supra,* however, the court distinguished *Caraher* in refusing to sustain the warrantless seizure of a pill bottle in the course of arresting defendant "for a crime with which the bottle had nothing to do." 295 Or at 347. Here, there is a clear relationship between the crime for which the officers had

probable cause to arrest defendant and the containers searched. The search was also reasonable as to time, space and intensity.

Although the testing of the contents of the container is considered a form of search apart from the initial seizure, *State v. Lowry, supra,* 295 Or at 346, defendant has not challenged the testing of the controlled substances either in this court or in the court below.[1]

Affirmed.

---

[1] Defendant's contention that the trial court erred in imposing a minimum sentence under ORS 144.110 is without merit. *State v. Brown,* 296 Or 458, 676 P2d 877 (1984).