Argued and submitted September 23, 1998, affirmed June 9, 1999

# STATE OF OREGON,
*Appellant,*

*v.*

# KEVIN JAMES WILLIAMS,
*Respondent.*

## (C960836393; CA A95654)

984 P2d 312

Janet A. Klapstein, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Peter Gartlan, Deputy Public Defender, argued the cause for respondent. On the brief were David E. Groom, Public Defender, and Diane L. Alessi, Deputy Public Defender.

Before Edmonds, Presiding Judge, and Armstrong and Brewer,* Judges.

BREWER, J.

Edmonds, P. J., concurring.

---

* Brewer, J., *vice* Warren, P. J., retired.

## BREWER, J.

The state appeals from a pretrial order suppressing evidence and dismissing this case at the state's request. ORS 138.060. Defendant was charged with supplying contraband, ORS 162.185, after marijuana was discovered in his possession when he was being booked after being arrested for unlawful possession of a firearm, ORS 166.250. The state argues that the trial court erred in determining that the police officer who arrested defendant for unlawful possession of a weapon lacked probable cause to do so and that the court further erred in determining that the marijuana should be suppressed as a result of the unlawful arrest. Defendant responds that the issue presented by the state is not reviewable, that the trial court correctly determined that no probable cause existed for the arrest, and that the trial court correctly determined that the marijuana should be suppressed. For the following reasons, we affirm.

Officer McConnell stopped a car after a pursuit during which the driver had attempted to elude two other officers. Defendant was the front seat passenger in the stopped car. A second passenger was in the back seat. During the ensuing contact, the driver was arrested for reckless driving. After arresting the driver, the officer conducted an inventory of the car in preparation for towing. During the inventory, the officer found a loaded 9mm pistol underneath the front passenger seat where defendant had been sitting. The officer then arrested defendant and the back seat passenger for unlawful possession of the weapon. Defendant was searched during booking, and 10 baggies of marijuana were discovered in his shoe. Defendant was charged with supplying contraband but ultimately was not charged with unlawful possession of a weapon.

Before trial, defendant moved to suppress evidence of the marijuana. He argued that the officer lacked probable cause to arrest him and that the later custodial search and resulting seizure of the marijuana were therefore illegal. The state countered that the officer's discovery of the gun during an inventory furnished the officer with probable cause to believe that defendant had committed the crime of unlawful

possession of a weapon and that the ensuing search and seizure were valid.

The police officer who arrested defendant after finding the gun in the car testified as follows on cross-examination:

"Q: And you arrested [defendant] based upon a gun that was found in the car in which he was a passenger?

"A: That's correct.

"Q: What was he under arrest for?

"A: Unlawful possession of a firearm.

"Q: Now, did you ever see [defendant] in possession of the firearm?

"A: In actual hands-on possession, no. But it was in constructive possession in that it was within his grasp or not grasp but within his area of control, easily retrievable in less than a second."

Based on this testimony, defense counsel argued that the officer lacked probable cause to believe that defendant possessed the weapon because the car was not defendant's car, the back seat passenger had access to the area under the passenger seat, and no evidence indicated that defendant knew the weapon was under the seat. The prosecutor responded that probable cause existed because the weapon was within the area of defendant's control within the car. The court stated:

"What it comes down to as the court sees it and I will listen to any other argument as to whether or not there's some other issue, is whether there was probable cause to believe more likely than not that the defendant knew that the gun was there. Certainly, the gun is in closer proximity to the defendant than anyone else in the vehicle. But the question remains, is it more likely than not from the evidence that the defendant had knowledge of the gun under the seat."

The trial court then made a number of factual findings:

"That there was no evidence indicating that the vehicle belonged to the defendant or he had any interest in the vehicle; that the vehicle was being driven by someone other than the defendant, that being the driver Pittman; that

"there were no movements by the defendant which indicated that he either placed or retrieved the gun during the period of time in which the officer saw the defendant in the car; that it is as earlier stated, unknown as to how long the gun had been there, unknown as to how long [defendant] had been in the right front passenger seat."

Based on those factual findings, the court concluded that it "is insufficient for there to be probable cause that it was more likely than not that the defendant had constructive possession of the gun."

The prosecutor then argued that the discovery of contraband during booking was sufficiently attenuated from the arrest and that evidence of the contraband should not be suppressed. The court rejected that argument, granted defendant's motion to suppress, and dismissed the case at the state's request.

As a preliminary matter, defendant argues that the state's appeal is not reviewable by this court. He contends that, because the state assigns error only to the order of suppression, the dismissal order renders the appeal moot. We disagree. In *State v. Denny*, 158 Or App 616, 620, 978 P2d 1014 (1999), we held that "[w]here, as here, the order of dismissal and the suppression order are embodied in the same document, a determination that suppression was erroneous mandates reversal of both the suppression and the dismissal." *Compare State v. Robinson*, 158 Or App 494, 500, 974 P2d 713 (1999) (suppression order rendered moot by entry of later order of dismissal that was not appealed). Under these circumstances, the state's failure specifically to assign error to the dismissal, in addition to the suppression, does not render the appeal moot. Neither does the state's voluntary dismissal preclude an appeal from the order of suppression and dismissal. *State v. Sulser*, 127 Or App 45, 47 n 1, 871 P2d 126 (1994).

Defendant also argues that we should not review the state's assignment of error because the scope of appeal from the dismissal does not include an order "which precede[d] the order * * * appealed from." *State v. Caruso*, 289 Or 315, 319, 613 P2d 752 (1980). However, in *Caruso*, the pretrial order from which the state sought review was not an appealable

order under ORS 138.060. The Supreme Court held that the state could not use an appeal from a dismissal as a conduit for appellate scrutiny of otherwise unreviewable intermediate orders. *Id.* at 320. In contrast, the state may appeal from a suppression order. ORS 138.060(3). We conclude that the issue raised by the state on appeal is reviewable, which brings us to the merits of this appeal.

■ On appeal, the parties essentially repeat their positions taken in the trial court, arguing about whether or not, under the facts of this case, the officer had probable cause to believe that defendant constructively possessed a firearm in violation of ORS 166.250 by being seated near where the firearm was concealed. Generally, we do not feel compelled to go beyond the parties' arguments to decide an issue presented on appeal. However, this case presents the exceptional circumstance in which, if we accept the parties' formulation of the issue presented, we would be forced to misinterpret a statute and, in doing so, to add an element to the crime of unlawful possession of a firearm that has no statutory basis. "In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties." *Stull v. Hoke,* 326 Or 72, 77, 948 P2d 722 (1997). That rule takes on an added significance in a criminal case, because an incorrect statutory construction can have direct bearing on the privacy interests of people throughout the state.

The problem with the parties' positions in this case is that they have assumed that a "constructive possession" analysis is identical under ORS 166.270 (felon in possession of a firearm) and ORS 166.250, the unlawful possession of a firearm statute. For the reasons set forth below, that assumption is erroneous. It follows from our analysis of the statutes that the trial court reached the correct conclusion in the present case, and we therefore affirm the trial court on an alternative ground.

ORS 166.250, the statute on which the state relies for its probable cause argument in this case, provides, in pertinent part:

"(1) Except as otherwise provided in this section, ORS 166.260, 166.270, 166.274, 166.280, 166.291, 166.292 or

166.410 to 166.470, *a person commits the crime of unlawful possession of a firearm if the person knowingly*:

"(a) Carries any firearm concealed upon the person, without having a license to carry the firearm as provided in ORS 166.291 and 166.292;

"(b) *Carries concealed* and readily accessible to the person *within any vehicle which is under the person's control or direction* any handgun, without having a license to carry such firearm as provided in ORS 166.291 and 166.292[.]" (Emphasis added.)

In contrast, ORS 166.270 makes it unlawful for a felon to have within his or her "possession or under the person's custody or control" firearms and various other weapons. In analyzing the "custody or control" element of ORS 166.270, courts have indicated on several occasions that a felon who is a passenger in a vehicle in which a weapon is concealed may have the weapon under his or her "custody or control," or within the passenger's constructive possession, in violation of that statute. *See, e.g., State v. Wrisley,* 138 Or App 344, 348-49, 909 P2d 877 (1995), *rev den* 327 Or 521 (1998) (front seat passenger constructively possessed firearm being passed around in back seat); *State v. Marsh,* 78 Or App 290, 294, 716 P2d 261, *rev den* 301 Or 320 (1986) (where the defendant admitted knowing that the gun was in the car available for his use, there was sufficient evidence to support the conclusion that he was in constructive possession of the weapon); *see also State v. Miller,* 238 Or 411, 413, 395 P2d 159 (1964) (indicating that either a driver or a passenger might have a weapon concealed in a car under that person's "custody or control").[1]

---

[1] In its brief, the state cites *State v. Coria,* 39 Or App 507, 592 P2d 1057, *rev den* 286 Or 449 (1979) with a cryptic parenthetical saying "gun and drugs found under passenger seat; defendant was passenger but had previously shared driving duties; despite defendant's denial of knowledge of drugs and gun, evidence sufficient." Unlike the other cases cited by the state, *Coria* did involve ORS 166.250. However, our entire discussion of the ORS 166.250 issue was:

"In his final assignment of error, defendant contends the court should have granted a judgment of acquittal of the weapons charge. Although defendant moved for judgment of acquittal of the two drug charges he made no such motion respecting the weapons charge. A question not raised and preserved in the trial court will not be considered on appeal." 39 Or App at 512.

Contrary to the state's assertion, *Coria* did not hold that there was "evidence sufficient" concerning the alleged violation of ORS 166.250.

However, ORS 166.250 differs in a key respect from the felon in possession statute. ORS 166.250(1)(a) makes it a crime to "[c]arr[y] any firearm concealed upon the person, without having a license * * *." The state does not argue that the weapon in the present case was concealed on defendant's person in violation of that subsection,[2] nor does it argue that section (c) of the statute, relating to possession of firearms by minors, applies under these circumstances. Clearly, the state is relying on section (b) of the statute, pertaining to handguns in vehicles. However, under subsection (b), three things must be established: that the handgun is "concealed and readily accessible to the person," that the person does not have a license to carry it, *and* that the handgun is concealed "within any vehicle *which is under the person's control or direction* * * *." (Emphasis added.) In short, the issue is not whether the *handgun* is within a person's control or direction, but whether the *vehicle* is. *See State v. Gilmore*, 123 Or App 594, 599, 860 P2d 882, *rev den* 318 Or 171 (1993) (discussing this element).

■    In the present case, the trial court's unchallenged findings that "there was no evidence indicating that the vehicle belonged to the defendant or he had any interest in the vehicle; [and] that the vehicle was being driven by someone other than the defendant" are dispositive. There was no evidence that defendant had "control or direction" of the vehicle in which the handgun was found, nor did the officer testify that he believed defendant had control or direction of the vehicle. Therefore, the officer did not have probable cause to believe that defendant had violated ORS 166.250(1)(b) because, under that statute, it is not a crime to be seated in a vehicle near where a handgun is concealed unless the vehicle is "under the person's control or direction."[3]

---

[2] The concurrence takes us to task for failing to address the potential relevance of ORS 166.250(1)(a). That provision clearly does not apply given the facts of this case and no extensive discussion of it is called for here. *See generally State v. Crumal*, 54 Or App 41, 43-45, 633 P2d 1313 (1981) (weapon that the defendant concealed under floor mat of a vehicle was not "concealed about his person" for purposes of ORS 166.240(1), because "if the legislature intended the phrase 'about his person' to include 'within any vehicle,' it could have used the same phrase, 'about his person,' in ORS 166.250").

[3] The state makes no argument that the officer had probable cause to believe that defendant had committed any crime other than that defined in ORS 166.250.

In summary, we are unable to affirm the trial court's probable cause ruling on the ground given by the trial court, because to analyze the question in that manner would involve tacit acceptance of the erroneous idea that defendant's proximity to or knowledge of the handgun was dispositive. Therefore, we rely on the alternative basis explained above for sustaining the trial court's decision. *See, e.g., Rader v. Gibbons and Reed Company*, 261 Or 354, 365 n 3, 494 P2d 412 (1972) ("[w]here the ruling of the trial judge is correct on any ground it will be upheld, even though his [or her] reasons for the ruling may have been erroneous."). Defendant's failure to raise this issue does not pose a preservation of error problem because he is not the appellant; moreover, his failure to develop this argument in the trial court is not dispositive because it was the state's burden to demonstrate that there was probable cause for defendant's arrest. *See generally* ORS 133.693.

■■ In its second assignment of error, the state argues that, even if the arrest was illegal, suppression was not an appropriate remedy. We analyze that contention under Article I, section 9, which was the foundation of the trial court's decision. The state relies on cases denying suppression of evidence obtained after an unlawful stop when the defendant subsequently committed a new crime justifying arrest. *See, e.g., State v. Weiland*, 72 Or App 25, 28, 695 P2d 85, *rev den* 299 Or 32 (1985); *State v. Gaffney*, 36 Or App 105, 108-09, 583 P2d 582 (1978), *rev den* 285 Or 195 (1979). However, that line of authority is inapposite. The crucial fact in those cases was that the new crime was directed at the arresting officers, thereby threatening their safety. *Weiland*, 72 Or App at 28; *Gaffney*, 36 Or App at 107. We have held that the purpose of the exclusionary rule[4] would not be served by suppressing evidence of such crimes. In *Gaffney*, we reasoned that

> "the results of such an extension of the exclusionary rule would be intolerable. A person who correctly felt that he had been illegally stopped, for example, could respond with unlimited violence and under an exclusionary rule be immunized from criminal responsibility for any action

---

[4] The purposes of the exclusionary rule under Article I, section 9, include protecting privacy interests. *State v. Smith*, 327 Or 366, 372, 963 P2d 642 (1998).

taken after the stop. That cannot be an appropriate rule."
*Id.* at 108-09.

*See also Weiland*, 72 Or App at 28. The rationale underlying our denial of suppression in those cases is absent here. The presence of the concealed marijuana did not threaten the officer's safety in any way. Defendant cooperated with the arrest and later, during a search that was directly related to the arrest, was found to be carrying contraband. Suppression of evidence that is the fruit of an unlawful search "restor[es] the parties to their position as if the state's officers had remained within the limits of their authority." *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983). We conclude that the trial court correctly suppressed the evidence.

Affirmed.

**EDMONDS, P. J.,** concurring.

The majority decides this case on a ground that neither party argued and that the trial court did not consider. To do so, the majority relies on the principle of statutory construction that we are required to interpret a statute correctly, even though the parties jointly understand it to have a different meaning. The majority then concludes that ORS 166.250(1)(b) does not apply to defendant, a passenger in a vehicle, because "[t]here was no evidence that defendant had 'control or direction' of the vehicle in which the handgun was found[.]" 161 Or App at 118. I do not quarrel with the proposition that we should not be bound to an erroneous belief of the parties about the meaning of a statute. However, if the majority is going to decide this case on a ground not raised, it should consider all available grounds.

In reaching its result, the majority declines to consider whether ORS 166.250(1)(a) is applicable because "[t]he state does not argue that the weapon in the present case was concealed on defendant's person[.]" 161 Or App at 118. The majority forgets that this matter came about because defendant moved to suppress evidence on the ground that the officer lacked probable cause to arrest him for possession of a gun. Although defendant is charged with supplying contraband under ORS 162.185(1), the officer testified that he arrested defendant for unlawful possession of a firearm.

Which subsection of ORS 166.250(1) defendant should have been charged under for having a concealed weapon was never before the trial court, nor was the state required to make such an election or to take a position on that issue. Rather, the issue is whether there was initial probable cause to arrest defendant for any offense that was committed in the officer's presence. If the officer has a substantial objective basis for believing that it is more likely than not that an offense, under ORS 166.250, has been committed in the officer's presence, that is enough to make an arrest. ORS 131.005(11). If, in the furtherance of the policy of properly interpreting statutes, the majority is going to decide the issue of probable cause to arrest on the ground that ORS 166.250(1)(b) does not apply to defendant, then it should consider all subsections of the statute that are available to the state under the circumstances that existed.

ORS 166.250(1) includes two alternatives for the charging of an occupant of a vehicle with the unlawful possession of a concealed weapon that are relevant here:

"(1) Except as otherwise provided in this section, ORS 166.260, 166.270, 166.274, 166.280, 166.291, 166.292 or 166.410 to 166.470, a person commits the crime of unlawful possession of a firearm if the person knowingly:

"(a) Carries any firearm concealed upon the person, without having a license to carry the firearm as provided in ORS 166.291 and 166.292;

"(b) Carries concealed and readily accessible to the person within any vehicle which is under the person's control or direction any handgun, without having a license to carry such firearm as provided in ORS 166.291 and 166.292[.]"

In interpreting a statute, our objective is to discern the legislature's intent in promulgating the statute. Our first level of inquiry is to examine the text of the statute and its context when read in connection with other relevant statutes. Also, when the Supreme Court interprets a statute, that interpretation becomes a part of the statute as if it had been included in the statute at the time of its enactment. *Gaston v. Parsons*, 318 Or 247, 252, 864 P2d 1319 (1994). ORS 166.250(1)(a) and (b) describe circumstances under which a

person unlawfully possesses a firearm, and they focus on the concealment of firearms under particular circumstances. Subsection (1)(a) applies to firearms concealed "upon the person," and subsection (b) concerns concealing firearms by a person within a vehicle that is under that person's control or direction. Because the officer had no information in this case that defendant controlled the vehicle or that it was under his direction, the majority is correct that the officer lacked probable cause to make an arrest for a violation of ORS 166.250(1)(b). However, for the reasons mentioned above, the inquiry does not end there.

When read in context with ORS 166.250(1)(b), it is apparent that ORS 166.250(1)(a) prohibits the carrying of a concealed weapon upon the person without a license, even if the possessor of the weapon is a passenger within a vehicle. The implicit predicate for the offense is the actual or constructive possession of a concealed weapon. In my view, there was probable cause for the officer to believe that defendant was in constructive possession of the gun underneath the seat of the vehicle in which he was a passenger. Constructive possession occurs when the possessor had control or the right to control the object in question. *State v. Oare*, 249 Or 597, 599, 439 P2d 885 (1968). Here, defendant was the closest person in the vehicle to the gun. The officer testified that defendant had unimpeded access to the gun and that the driver would have had to reach across the vehicle and under the passenger's seat to have placed the gun there. Under the circumstances, the officer was entitled to believe that it was more likely than not that defendant was the individual who possessed the weapon under the seat.

In addition to having probable cause to believe that defendant was in possession of the firearm under the seat, ORS 166.250(1)(a) and (b) require that the firearm be concealed in a prohibited place. The Supreme Court's holding in *State v. Anfield*, 313 Or 554, 836 P2d 1337 (1992), is instructive. In that case, the defendant was charged with possession of a controlled substance that was discovered after his arrest for the unlawful possession of a firearm. When the arresting officer arrived at the scene of a vehicle accident, the defendant was observed holding a black bag in one hand. The officer thought the bag "looked like a gun bag of a type that was

sold at local sporting goods stores and that he had seen at his shooting range." *Id.* at 556. When the defendant dropped the bag on the pavement, the officer heard a metallic clunk that sounded to the officer as though the bag contained firearms. The officer lifted the bag a few inches off the ground and felt it. He squeezed the bag and discerned the outlines of guns inside the bag. He then unzipped the bag and discovered two loaded pistols, which led to the arrest of the defendant for the unlawful possession of a concealed firearm.

The defendant moved to suppress the evidence of the controlled substance on the ground that his arrest was unlawful because the guns "were not 'upon his person.' " *Id.* at 557. At the time of the defendant's arrest, ORS 166.250(1)(b) (1987) provided that a person unlawfully possesses a firearm if that person knowingly "[c]arries any firearm concealed upon the person, without having a license to carry such firearm[.]" Defendant argued that the statute meant that it was unlawful to carry a concealed firearm " 'on, not near a person's body.' " *Anfield*, 313 Or at 558. He explained that " '[t]emporarily holding a gun bag in one's hand and not on one's person cannot satisfy the "upon" language of the statute.' " *Id.* (bracketed material in original).

The court rejected the defendant's argument, holding:

> "While we have found no Oregon case in point, we agree with the analysis of other courts that have concluded that the language, 'upon the person,' includes purses, handbags, bags, and their contents, when they are carried in the manner that defendant was carrying this bag. The pertinent consideration is whether defendant carried the bag, not the fact that it was a bag or how long defendant carried it. [The officer] saw defendant carrying a bag. While defendant held the bag, it and, necessarily, its contents were 'upon the person' of defendant. [The officer] later learned that the bag contained weapons. [The officer], therefore, had probable cause, as defined by ORS 131.005(11), to believe that defendant had violated ORS 166.250(1)(b) (1987)." *Anfield*, 313 Or at 559 (citations omitted).

In light of the court's holding in *Anfield* and its intrepretation of the identical lanaguge that governs this case, the issue becomes whether defendant's possession of the firearm

under his seat constituted a place of concealment prohibited by the statute. The officer testified:

> "Q. Now, did you ever see [defendant] in possession of the firearm?
>
> "A. In actual hands-on possession, no. But it was in constructive possession in that it was within his grasp or not grasp but within his area of control, easily retrievable in less than a second."

In other words, would the legislature have contemplated that a concealed firearm, easily retrievable in less than a second by its possessor, would constitute a "firearm concealed upon the person" of the possessor for purposes of ORS 166.250(1)(a)? Perhaps—had the legislature thought about the problem that this case presents in light of common, modern day societal ills such as drive-by shootings and other events involving the illegal use of firearms. However, the language of the existing statute[1] does not afford that interpretation.

ORS 166.250(1)(a) and (b) focus on *places* of concealment and not whether there is easy access to an object. ORS 166.250(1)(b) makes it unlawful to conceal a weapon in places in a vehicle where it is readily accessible to the person having control over the vehicle. Similarly, ORS 166.250(1)(a) makes it unlawful to conceal weapons in places that are "upon the person." The phrase, "firearm[s] concealed upon the person" refers to firearms concealed by clothing as well as firearms concealed in clothing or other containers that have had contact with the person such as a coat, a briefcase, a suitcase or a bag. In *Anfield,* the prohibited place of concealment was a bag that the defendant had been carrying. While a defendant could be in actual or constructive possession of a weapon, a fact inferable from the person's proximity and unimpeded access to the weapon, ORS 166.250(1)(a) and (b) also require a showing that the firearm was concealed in a prohibited place.

---

[1] The statutory language "concealed upon his person" in ORS 166.250 had its genesis in 1925. Or Laws 1925, ch 260, § 5. Subsequently, that language was codified as Oregon Code 1930 § 72-205. In 1953, this language was included in ORS 166.250.

In this case, the officer was entitled to infer that defendant was in constructive possession of the firearm. However, the place where, the officer could have believed, defendant concealed the firearm was not on his person or in a vehicle under his control. Because defendant did not conceal the firearm in a place prohibited by the statute, the officer lacked probable cause to arrest him.

For the reasons expressed, I concur in the majority's result.