[No. 6068-3-III.   Division Three.   December 11, 1984.]

THE STATE OF WASHINGTON, *Appellant*, v. RAYMOND J. OWENS, *Respondent*.

*Joseph Panattoni, Prosecuting Attorney,* for appellant.

*Chelsea C. Korte* and *Dano, Cone, Fraser & Gilreath,* for respondent.

McINTURFF, J.—The State appeals an order suppressing the testimony of a police officer and his passenger regarding Mr. Owens' flight from an illegal traffic stop. We vacate the order and remand for trial.

Officer Patrick Woodruff of the Roslyn Police Department first observed a black and white Chrysler Imperial with Montana license plates in December 1982, and subsequently on four other occasions in January and February 1983. On March 13, 1983, although the car was not engaged in any other illegal activity, the officer attempted to stop the car, suspecting it was being operated in violation of the vehicle licensing statute, RCW 46.16.010.[1] As he approached the car with his emergency light flashing, the car accelerated and raced through town at speeds of 50 m.p.h. and through five stop signs. Mr. Owens was charged with a violation of RCW 46.61.024,[2] attempting to elude a

---

[1]RCW 46.16.010 provides in part:
  It shall be unlawful for a person to operate any vehicle over and along a public highway of this state without first having obtained and having in full force and effect a current and proper vehicle license . . .
*See* RCW 46.16.030—nonresident exemption; WAC 410–20–020—definition of resident; WAC 410–20–040—restriction and conditions re operation of vehicle registered in another jurisdiction.

[2]RCW 46.61.024 provides in part:
  "Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by

pursuing police vehicle.

In response to Mr. Owens' pretrial motion to suppress, the trial court ruled that because the officer did not have sufficient probable cause to make the original stop, his testimony regarding Mr. Owens' flight would be suppressed.[3] The State offered to proceed with the trial by substituting the testimony of the officer's passenger, but the court found the passenger "was acting as a deputized or at least [in a] quasi–official capacity" and suppressed his testimony. The State was unable to proceed with its case because the officer and passenger were the only witnesses to the chase. The State has appealed the suppression order, arguing (1) RCW 46.61.024, a "resisting arrest" statute, does not require probable cause as an element of that crime, and (2) the police officer had reasonably sufficient objective indicia to make the original stop. Because of our ruling on the first issue, the second becomes moot, and thus will not be considered.

The first issue relates to the admissibility of testimony of a police officer who has arguably made an unauthorized stop, but has subsequently witnessed illegal actions by the potential arrestee separate from the initial stop. The State relies on *State v. Mather,* 28 Wn. App. 700, 626 P.2d 44 (1981), but Mr. Owens replies that the suppression of evidence obtained from an illegal misdemeanor arrest is well established, citing *State v. Bonds,* 98 Wn.2d 1, 653 P.2d 1024 (1982).

An analysis of the facts before us presents two distinct actions taken by the police officer—the first being the ini-

---

the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and his vehicle shall be appropriately marked showing it to be an official police vehicle."

[3]A "seizure" within the meaning of the Fourth Amendment occurs when a reasonable person believes he is not free to leave. In the case of automobiles, it occurs when the police officer switches on his flashing light. *State v. Stroud,* 30 Wn. App. 392, 394–96, 634 P.2d 316 (1981) (citing *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968) and *Delaware v. Prouse,* 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979)), *review denied,* 96 Wn.2d 1025 (1982).

tial attempt to stop Mr. Owens' car, and the second being the chase and arrest for eluding a police officer.

The issue as presented by the State relates to probable cause and whether it is necessary to find the same if the charge arises under RCW 46.61.024. However, a careful reading of the judge's suppression order indicates no mention of probable cause to arrest after the chase, nor does it mention RCW 46.61.024. It states only:

> the officer did not have sufficient specific, articulable circumstances from which he could reasonably have concluded that the defendant was engaged in criminal actions, and specifically that he was in violation of RCW 46.16.010.

Presumably, the State could have continued with the trial and a possible conviction under RCW 46.61.024 if it had had additional evidence which was not tainted by the initial illegal stop. The question that must be addressed is whether the police officer and his passenger can testify regarding Mr. Owens' actions following the illegal stop, or whether they are precluded from testifying because their testimony is barred by some relation to the exclusionary rule of the Fourth Amendment and the fruit of the poisonous tree doctrine.

In *Mather,* cited by the State, the defendant argued RCW 46.61.024 was unconstitutionally vague and overbroad. At the time of his arrest, Mather was traveling in excess of 85 m.p.h. on Interstate 5. He cut in front of another vehicle to exit the freeway and was observed by a state trooper who attempted to stop him. A chase ensued and the defendant was arrested when he finally stopped his vehicle. The court clearly indicates at footnote 1, page 703, it is not ruling on a suppression question. *Mather* is, therefore, a starting point, but is not dispositive of the issue before us. However, the court noted the following at page 703:

> The constitutional right to be free from unreasonable searches and seizures does not create a constitutional right to react unreasonably to an illegal detention. The

police power, therefore, may lawfully extend to prohibiting flight from an unlawful detention where that flight indicates a wanton and wilful disregard for the life and property of others.

(Footnote omitted.) An extension of the *Mather* decision to the suppression issue is found in *State v. Aydelotte,* 35 Wn. App. 125, 132, 665 P.2d 443 (1983). The defendant there was granted an order suppressing evidence and dismissing charges of failure to obey an officer, assault in the second degree and resisting arrest. He argued the police officers had unlawfully entered his property to arrest him without a warrant. The court held although the entry may have been illegal, the evidence of the assault against the officers was not the result of an exploitation of an illegal entry. Our court reasoned at page 132:

> Whether the evidence of crimes against police officers following a Fourth Amendment violation should be suppressed under the exclusionary rule in a prosecution for those crimes presents an issue of first impression in Washington. All courts which have considered this issue, however, agree that evidence of post–entry assaults on police officers are outside the scope of the exclusionary rule. . . .
>
> . . . The issue here, however, is not whether physical evidence obtained because of a warrantless entry should be suppressed, but whether evidence of crimes committed against police officers after they have unlawfully entered a home should be suppressed. We decline to hold that after an unlawful entry evidence of subsequent crimes committed against police officers must be suppressed. Such a rule would produce intolerable results. For example, a person who correctly believed that his home had been unlawfully entered by the police could respond with unlimited force and, under the exclusionary rule, could be effectively immunized from criminal responsibility for any action taken after that entry. *See State v. Gaffney,* [36 Or. App. 105,] 108–09 [(1978)]. We do not believe that either the state or federal constitution compels such a result.

(quoting *State v. Burger,* 55 Or. App. 712, 715–16, 639 P.2d

706, 708 (1982)). The court then concluded it was for the trier of fact to determine if Aydelotte's response to the police intrusion was reasonable, not for the trial court in a pretrial motion.[4]

Mr. Owens cites *State v. Bonds, supra,* which deals extensively with the suppression of evidence obtained as a result of an illegal search. However, the fact pattern of the instant case more closely resembles that of *Aydelotte* and the rules announced therein.

We conclude the actions of Mr. Owens were sufficiently distinguishable from the unauthorized police intrusion. Ordinarily it would be the decision of the trier of fact to determine whether his actions were a normal and reasonable reaction to the illegal stop; and, under the rule announced in *Aydelotte,* the evidence would include the testimony of the police officer and his passenger. Under the circumstances of this case, however, we take judicial notice of the fact that a 50 m.p.h. race through town with disregard for five stop signs is not a normal and reasonable reaction to an illegal stop, but shows a complete wanton and willful disregard for the life and property of others.

The suppression order is vacated; the cause is remanded for trial on the issue of defendant's violation of RCW 46.61.024, resisting arrest.

MUNSON, C.J., and GREEN, J., concur.

Review denied by Supreme Court February 15, 1985.

---

[4]*See also State v. Rodriguez,* 32 Wn. App. 758, 762, 650 P.2d 225 (1982) (evidence obtained from a consensual search following an illegal detention will not necessarily be suppressed); *State v. Childress,* 35 Wn. App. 314, 666 P.2d 941 (1983) (witness statement obtained as a result of illegal search in California not suppressed); *Ellison v. State,* 410 A.2d 519 (Del. Super. 1979), *aff'd,* 437 A.2d 1127 (Del. 1981), *cert. denied,* 455 U.S. 1026, 72 L. Ed. 2d 147, 102 S. Ct. 1730 (1982).