Michael DENNIS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9902–CR–82.

Court of Appeals of Indiana.

Oct. 5, 2000.

Lesa Lux Johnson, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Kostas A. Poulakidas, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge

Michael Dennis appeals his conviction of Intimidation,[1] a class D felony, and Disorderly Conduct,[2] a class B misdemeanor. Dennis presents the following restated issues for review:

1. Did the trial court err in denying Dennis's motion to suppress evidence concerning statements he made at the time of his arrest?

2. Was the evidence sufficient to support the convictions?

We affirm.

The facts favorable to the convictions are that at approximately 3 a.m. on September 19, 1997, Indianapolis Police officers Paula Irwin and Christine Mannina were called to the site of a disturbance at the home of Lisa Tyson. When the officers approached the front door, they heard "screaming and yelling", *Record* at 224, coming from inside the house. Tyson answered the door and asked the officers to come in. Upon entering, the officers saw Dennis, who did not live with Tyson, pacing through the house. He appeared to be "very upset and agitated." *Id.* The officers believed that Dennis was intoxicated because he smelled of alcohol, his speech was slurred, he had red, watery eyes, and he staggered as he walked. After speaking with Tyson, the officers asked Dennis to leave. Dennis left the house and walked away. Officers Irwin and Mannina did not leave the scene until Dennis disappeared down the street because he continued to scream and yell as he exited the house and walked away.

Approximately forty-five minutes later, the officers received another dispatch to go to Tyson's house, again because of a disturbance. When they arrived, the officers saw Dennis on the front porch of Tyson's house. Dennis, who still appeared to be intoxicated, was pounding on Tyson's door and threatening to kick the door down if she did not let him in. The officers asked Dennis to stop, directed him to step away from the front door, and placed him under arrest for public intoxication. Officer Irwin described Dennis's actions after he was placed under arrest and the officers were completing the paper work and awaiting a vehicle to transport Dennis to jail:

> He was yelling and screaming that we had arrested him and yelled threats at us and at Miss Tyson in the house that he couldn't believe that she had called the police. Then he started making direct threats at me and Officer Mannina. Actually he said to Officer Mannina that he would take a 9 mm and blow her head off. Directly looking at her and talking to her. Then he told me that he would tear my head from my body. He called us white supremists [sic]. This was going on and it was getting louder, and we are telling him to please quiet down. You know, it's starting to make people come out onto the porches and the lights were coming on. People were coming out to see what was causing the disturbance. He continued threatening. He said we'll pay for taking his kids away from him. He also said that he would call again some time and we would see him again. And we would pay for what he did and we would definitely be back to that house. So my understanding was that he would call some time and we would come back and he would get us for some reason. For this arrest. And he continued making these threats on and on. Getting louder and louder.

*Record* at 201–02.

Subsequently, Dennis was charged with public intoxication, intimidation, and disor-

---

**1.** Ind.Code Ann. § 35–45–2–1 (West Supp. 1999).

**2.** Ind.Code Ann. § 35–45–1–3 (West 1998).

derly conduct and a jury trial was conducted on September 17, 1998. After the State rested its case, Dennis submitted a motion for a directed verdict on all three counts. The trial court granted Dennis's motion with respect to the public intoxication charge, but denied the motion with respect to the other two charges.

1.

 At trial, Dennis submitted a motion to suppress statements he made while on Tyson's porch after his arrest. In support of the motion, Dennis argued that the arrest was illegal, and therefore any statements made thereafter were "fruits of the poisonous tree." He contends that the trial court erred in denying his motion to suppress.

Dennis's contentions upon this issue rest upon the premise that his arrest was illegal.[3] We will briefly explain his contentions on this point. The offense of public intoxication includes two elements: (1) being in a public place (2) in a state of intoxication. When the police officers arrived at Tyson's house the second time, Dennis was located on Tyson's porch. It was on the porch that the officers initially arrested Dennis for public intoxication. Dennis contends that he could not have been guilty of public intoxication at the time because he was not in a public place. In fact, it was upon this basis, *i.e.*, the failure to prove the element of being located in a public place, that the trial court directed a verdict in Dennis's favor on the public intoxication charge at trial. Further, Dennis argues Officer Irwin knew that Dennis was in a private place at the time she arrested him, therefore, the arrest was neither reasonable nor made in good faith. Because the arrest was illegal, any statements made after the arrest were fruits of the illegal tree and should be excluded.

 Under the "fruit of the poisonous tree" doctrine, evidence is barred in a criminal proceeding if it was obtained in the course of unlawful searches and seizures. *State v. Farber*, 677 N.E.2d 1111 (Ind.Ct.App.1997), *trans. denied.* When applicable, the doctrine operates to bar both evidence directly obtained and evidence derivatively gained as a result of information learned or leads obtained during an unlawful search or seizure. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The doctrine may be invoked upon a showing that the challenged evidence was obtained by the State in violation of the defendant's Fourth Amendment rights. *New York v. Harris*, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990); *State v. Farber*, 677 N.E.2d 1111.

We can find no Indiana case discussing whether the evidence of crimes committed against police officers following an alleged Fourth Amendment violation should be suppressed under the exclusionary rule. We have, however, discovered cases in which the appellate courts of two of our sister states addressed a similar issue. In *State v. Owens*, 39 Wash.App. 130, 692 P.2d 850 (1984), a police officer decided to stop a vehicle on the basis that he had observed the vehicle operating in that area for several months with out-of-state plates. At the time, the officer did not observe the vehicle committing any moving traffic violations. When the officer activated his emergency lights and sirens, the subject vehicle accelerated away at an excessive speed, running several stop signs along the way. The driver was charged with attempting to elude a pursuing police vehicle. The defendant sought to suppress the officer's testimony on the basis that the stop was illegal, and therefore everything relative to events occurring after the illegal stop, including the officer's testimony about same, should be excluded as fruit of the poisonous tree. The trial court granted the motion to suppress and the state

---

**3.** The State does not challenge the trial court's decision to grant a directed verdict in Dennis's favor on the charge of public intoxi-cation. Therefore, we will assume for the sake of the analysis that the trial court's determination in that regard was correct.

appealed. The appellate court framed the issue as: "whether the police officer and his passenger can testify regarding [the defendant's] actions following the illegal stop, or whether they are precluded from testifying because their testimony is barred by some relation to the exclusionary rule of the Fourth Amendment and the fruit of the poisonous tree doctrine." *Id.,* 692 P.2d at 851.

■ The Appellate Court of Washington concluded that the trial court erred in suppressing the officer's testimony. In its analysis, the court cited *State v. Burger,* 55 Or.App. 712, 639 P.2d 706 (1982), a case which, like the instant case, involved an offense committed against a police officer after an arguably unlawful arrest. The following excerpt from *Burger* explains the basis for that court's holding that the exclusionary rule does not bar the testimony of police officers concerning criminal offenses that occurred after, and were separate from, an illegal arrest:

> The issue here, however, is not whether physical evidence obtained because of a warrantless entry should be suppressed, but whether evidence of crimes committed against police officers after they have unlawfully entered a home should be suppressed. We decline to hold that after an unlawful entry evidence of subsequent crimes committed against police officers must be suppressed. Such a rule would produce intolerable results. For example, a person who correctly believed that his home had been unlawfully entered by the police could respond with unlimited force and, under the exclusionary rule, could be effectively immunized from criminal responsibility for any action taken after that entry. We do not believe that either the state or federal constitution compels such a result.

*State v. Burger,* 55 Or.App. at 715–716, 639 P.2d at 708–709. We find the *Burger* court's reasoning persuasive. Accordingly, we conclude, as did both the Washington and Oregon appellate courts, that the ex-clusionary rule does not prohibit police officers from providing evidence pertaining to illegal activity that occurred even after an illegal arrest, so long as the illegal activity is separate from the illegal arrest. *Cf.·Haley v. State,* 696 N.E.2d 98 (Ind.Ct. App.1998) (the actions upon which the conviction of resisting law enforcement was based occurred after the unlawful search of his tent, and were not a "direct result" of the unlawful search; therefore, testimony pertaining thereto were not fruits of the illegal search and seizure and the trial court did not err in denying the defendant's motion to suppress concerning this testimony), *trans. denied.*

### 2.

■ Dennis contends that the evidence was insufficient to support the conviction.

■ In evaluating claims of insufficient evidence, we neither reweigh evidence nor judge witness credibility, and consider only the evidence and inferences favorable to the conviction. *Ellis v. State,* 725 N.E.2d 411 (Ind.2000). We will affirm if the probative evidence and reasonable inferences could have led the fact-finder to find the defendant guilty beyond a reasonable doubt.

In order to obtain a conviction for intimidation, the State was required to present evidence establishing that Dennis, (1) with the intent to place another person in fear of retaliation for a prior lawful act, (2) communicated a threat (3) to another person (4) who was a police officer. IC § 35–45–2–1. Officers Irwin and Mannina testified that Dennis repeatedly threatened to kill them after being arrested and described in detail the manner in which he would do so. In the instant case, the question of whether the arrest was lawful was relevant only to the trial court's determination of the admissibility of evidence. The trial court's conclusion that the State failed to prove an element of the offense of public intoxication did not render the arrest an unlawful act within the meaning of

IC § 35–45–2–1. *See Randall v. State,* 474 N.E.2d 76 (Ind.1985). The evidence was sufficient to support the conviction. *See Hendrix v. State,* 615 N.E.2d 483 (Ind.Ct. App.1993).

Judgment affirmed.

DARDEN, J., and VAIDIK, J., concur.