Roy SOWELL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0206–CR–448.

Court of Appeals of Indiana.

March 11, 2003.

A. Frank Gleaves, III, Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Roy Sowell appeals his conviction, after a jury trial, on one count of carrying a handgun without a license as a C felony and two counts of resisting law enforcement as class A misdemeanors.

We affirm.

## ISSUES

1. Whether the trial court erred in denying Sowell's motion to dismiss.

2. Whether sufficient evidence supports Sowell's conviction for carrying a handgun without a license.

## FACTS

At about 11:30 a.m. on June 27, 2001, Officer Weaver of the Indianapolis Police Department was "running radar in the 2400 block of Arlington." (Tr. 63). From his vantage point on 24th Street at Arlington Avenue, Weaver saw a gray Chevy "traveling at a high rate of speed southbound" in the left lane, with two passengers "both turned around looking at" an IPD car "coming up behind ... also going southbound on Arlington." *Id.* The Chevy "quickly turned left" into a residential driveway, and the passengers appeared to watch the IPD car pass. (Tr. 64). Once the police car had passed by, the Chevy backed out of the drive and continued south on Arlington.

Officer Weaver had clocked the Chevy going 43 miles per hour in a 35 mile-per-hour zone. As he pulled his squad car onto Arlington Avenue, the Chevy's passengers observed him, and the Chevy "turn[ed] left at the first street they came to." (Tr. 68). Weaver turned behind the car, entered the car information on his computer, and stopped the car at Windsor and Kenyon. Weaver approached the driver and asked for his license. The driver produced a driver's license. Weaver did not issue a traffic ticket but warned the driver to slow down. Weaver observed that the three men "still appeared very nervous," so he "asked them where they were going." (Tr. 71). The front seat passenger, Sowell, said "2356 Kenyon," which was the second house north on Kenyon or about forty yards from where Weaver had stopped the car. *Id.* Weaver

watched as the car turned north on Kenyon and drove past that address. He then followed the car as it made a series of abrupt turns, after each of which the passengers would turn around looking at Weaver. The series of turns, which made them "actually ... going around in a circle," the fact that the car had not stopped at the 2356 Kenyon address but was getting farther away from it, and the repeated turning around of the passengers made Weaver suspicious that "there might have been criminal activity going on," and he stopped the car "to investigate." (Tr. 17, 18).

Weaver asked the driver to step out and step to the back of the car. Weaver asked the driver where he was going. The driver said "his cousin's house" and then called to the passengers to ask for the address. Sowell "yelled something back," which Weaver "didn't catch." (Tr. 75). Since Sowell had responded to the question, Weaver walked to the front passenger door, opened it, and asked Sowell to step out. (Tr. 75). After Sowell had "stepped out of the car," he "then ... bent" and "reach[ed] down with his right hand underneath the seat" and pulled out a handgun. (Tr. 77). Sowell spun around and pointed the handgun toward Weaver. Weaver grabbed Sowell's arm and tried to get the handgun away from him. They struggled for twenty to thirty seconds, with Sowell holding on to the handgun. Finally, the handgun came "out of [Sowell's] hand" and "landed in the grassy area" nearby. (Tr. 83). Weaver wrestled Sowell to the ground. However, Sowell broke free and ran.

Weaver reported a description of Sowell and the direction of his flight. Weaver remained at the scene to secure the handgun lying nearby. The handgun was loaded, with one round in the chamber and four in the magazine. Sowell was appre-

hended by other police officers within a short time.

On June 28, 2001, Sowell was charged with carrying a handgun without a license and two counts of resisting law enforcement. On January 29, 2002, Sowell moved to suppress the handgun, asserting that it had been obtained pursuant to an unlawful stop. After hearing testimony by Officer Weaver, the trial court denied the motion.

On April 10, 2002, Sowell was tried. The jury found Sowell guilty on all three counts.[1]

## DECISION

### 1. Motion to Suppress

The trial court denied Sowell's motion to suppress upon finding that (1) Weaver's observations justified his making "a lawful investigatory stop"; and (2) "even if Weaver did not have reason to stop the car the second time," the acts constituting the charged crimes would be admissible because those acts took place *"after* [Sowell] was asked to step out of the car." (App.63, 64). Sowell argues that the trial court erred as to both conclusions. We disagree.

■■■ When we consider the denial of a motion to suppress, our review "is similar to other sufficiency matters." *Edwards v. State,* 759 N.E.2d 626, 630 (Ind.2001). "The record must disclose substantial evidence of probative value that supports the trial court's decision." *Id.* "We do not reweigh the evidence and we consider conflicting evidence most favorably to the trial court's ruling." *Id.*

■■■ The Fourth Amendment to the United States Constitution guarantees the right to be secure against unreasonable search and seizure. *Parker v. State,* 697 N.E.2d 1265, 1267 (Ind.Ct.App.1998), *trans. denied.* This protection also governs " 'seizures' of the person." *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889, 911 (1968). However, pursuant to *Terry,* police may stop an individual for investigatory purposes if, based upon specific, articulable facts, the officer has a reasonable suspicion that criminal activity "may be afoot." *Id.* at 27, 88 S.Ct. 1868. Such reasonable suspicion must be comprised of more than an officer's general "hunches" or unparticularized suspicions. *Id.* We consider the totality of circumstances in determining whether the police had reasonable suspicion to believe there was criminal activity afoot. *Carter v. State,* 692 N.E.2d 464, 467 (Ind.Ct.App. 1997). The level of suspicion for a *Terry* stop "is less demanding than probable cause." *Platt v. State,* 589 N.E.2d 222, 226 (Ind.1992). On review, we consider whether the facts known by the police at the time of the stop were sufficient for a man of reasonable caution to believe that an investigation was appropriate. *Id.*

Officer Weaver had first observed the Chevy make a quick turn off the street into a residential driveway after his passengers had observed an approaching police car. After the passengers watched the police car pass, the Chevy backed out of the driveway and resumed the direction of its original travel. Weaver stopped the car for speeding, but he advised that he would not ticket the driver and warned him to reduce his speed. Even though he had only warned the driver, all three men

---

1. The jury convicted Sowell of carrying a handgun without a license as a class A misdemeanor. Sowell then admitted to having been convicted of a felony in 1999. Thus, the trial court entered judgment of conviction for the offense as a C felony. *See* IND.CODE § 35–47–2–23 (carrying a handgun with a license offense is class C felony if person has been convicted of a felony within fifteen years before date of offense).

continued to appear unusually nervous. Sowell indicated that their destination was a house only about forty yards away. Nevertheless, the car passed by that address and proceeded to make a series of circular turns, after each of which the passengers would turn around to see if Weaver was still following, and it was going away from the indicated destination. These facts are sufficient for a man of reasonable caution to believe that an investigation was appropriate. *See Platt*, 589 N.E.2d at 226. Therefore, the trial court did not err in concluding that Weaver's second stop of the car was a lawful investigatory stop.

■ The trial court also noted our holding in *Dennis v. State*, 736 N.E.2d 300, 303 (Ind.Ct.App.2000), that the exclusionary rule does not prohibit police officers from providing evidence pertaining to illegal activity that occurred "after an illegal arrest, so long as the illegal activity is separate from the illegal arrest." Sowell notes that his counsel conceded that Sowell had "wrongly resisted law enforcement," and asserts that his argument on the motion to suppress is "directed at evidence of his alleged possession of a handgun after an illegal stop." Sowell's Br. at 10. Sowell then claims that *Dennis* does not apply when the issue is "the admission of illegally obtained evidence." *Id.* However, it was only after Sowell had stepped out of the car that *he* reached back inside and *he* retrieved a handgun from underneath the seat. It was Sowell who first "obtained" the handgun, and it was his "carrying" of the handgun that was alleged to be the criminal offense. This alleged illegal activity is "separate from" the stop of the car in which Sowell was a passenger and his being asked to step out of that car. *Dennis*, 736 N.E.2d at 303. Thus, the exclusionary rule would not apply to the evidence about Sowell's possession of the gun after he had exited the car. *Id.*

## 2. *Sufficiency*

■ "In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Robertson v. State*, 765 N.E.2d 138, 139 (Ind.2002).

■ Sowell argues that the State failed to prove beyond a reasonable doubt that he possessed a handgun. Specifically, Sowell notes that there was no evidence of his fingerprints on the handgun found nearby, and he claims "Weaver was wrong in his belief that Sowell possessed the gun." Sowell's Br. at 11.

Sowell essentially asks that we reweigh the evidence and judge the credibility of Officer Weaver. This we cannot do. *See Robertson*, 765 N.E.2d at 139.

■ The State was required to prove that Sowell (1) carried a handgun, (2) on or about his person, (3) in a place not his dwelling, property, or fixed place of business. IND.CODE § 35–47–2–1; *see also Seel v. State*, 739 N.E.2d 170, 172 (Ind.Ct.App. 2000). "Actual possession occurs when a defendant has direct physical control over an item." *Seel*, 739 N.E.2d at 172. Weaver testified that Sowell took the handgun out of the car, moved it toward the officer, and then continued to hold the handgun in his hand during the time that Sowell and Weaver were struggling. This evidence is sufficient to prove beyond a reasonable doubt that Sowell did carry the handgun on his person in a place that was not his

dwelling, property, or fixed place of business.

We affirm.

NAJAM and VAIDIK, JJ., concur.