Jason RONCO, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 64A05–0505–CR–271.

Court of Appeals of Indiana.

Jan. 12, 2006.

Dave Welter, Joshua Brown, Legal Intern, Jeremy Butler, Legal Intern, Valparaiso University Law Clinic, Valparaiso, for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

KIRSCH, Chief Judge.

After a jury trial, Jason Ronco was convicted of resisting law enforcement[1] as a Class A misdemeanor and disorderly conduct[2] as a Class B misdemeanor. He appeals, raising two issues, which we restate as:

I. Whether the trial court erred when it responded to a question from the jury after the jury had begun its deliberations; and

II. Whether the trial court abused its discretion when it admitted police testi-

mony regarding Ronco's illegal activity, which occurred after an unlawful stop.

We reverse in part and affirm in part.

### FACTS AND PROCEDURAL HISTORY

On September 11, 2003, at approximately 12:46 a.m., Valparaiso Police Officer Todd Kobitz was patrolling the downtown area of Valparaiso, Indiana in a marked police vehicle. He drove past the parking lot of the Round the Clock restaurant and saw two individuals standing together near a minivan and a car. When Officer Kobitz pulled into the parking lot, the individuals dispersed, entered their respective vehicles, and the person in the minivan drove away. The other individual, Ronco, remained in his car in the parking lot. When Officer Kobitz drove through the parking lot and past Ronco's car, Ronco stared at him. Officer Kobitz finished driving through the parking lot, looked back at Ronco's car, and saw Ronco still staring at him. At that time, Officer Kobitz turned his vehicle around and reentered the parking lot. He parked his police vehicle behind Ronco's car and got out to speak to Ronco, whom he thought was acting suspiciously.

When Officer Kobitz stopped and got out of his vehicle, Ronco also exited his car. Officer Kobitz noticed that Ronco had one of his hands clenched. He repeatedly asked Ronco to show what was in his hand, and Ronco refused. Ronco then turned around and took a step. Officer Kobitz believed that Ronco was attempting to flee, so he grabbed Ronco from behind, around the upper body in a "bear hug" in order to prevent him from fleeing. Officer Kobitz also told Ronco to stop resisting. Officer Kobitz held Ronco in this "bear

---

1. *See* IC 35–44–3–3(a).

2. *See* IC 35–45–1–3.

hug" for approximately thirty seconds until Officer Steven Jackson arrived at the parking lot.

After Officer Jackson arrived, Ronco continued to resist Officer Kobitz's efforts to arrest him. Officer Jackson grabbed Ronco's shoulder, and Ronco immediately kicked Officer Jackson in the groin area. Officer Jackson stepped back in pain, and Ronco kicked him a second time on the inside of the thigh. During this time, Ronco was still struggling while Officer Kobitz held him. Officer Jackson then delivered three knee strikes to Ronco's midsection area in an attempt to stun Ronco or knock the wind out of him. Both officers repeatedly told Ronco to stop resisting and to get on the ground, but he continued to struggle. Officer Jackson delivered two hand strikes in quick succession to Ronco's "brachial plexus origin notch" in another attempt to stun him. *Trial Tr.* at 44. Ronco then fell to the ground, but he still struggled with the officers. While repeatedly yelling at Ronco to stop resisting and to give them his hands, Officer Jackson struck Ronco on the side of the thigh on the "perirenal nerve" to attempt to obtain compliance from Ronco. *Id.* at 45–46. Ronco ceased struggling and the officers were able to handcuff him. He was placed in the police vehicle and was very upset, belligerent, challenging, and confrontational toward the officers. The officers found the top of a marijuana plant on the ground near Ronco's car.

On September 11, 2003, the State charged Ronco with battery to law enforcement, as a Class A misdemeanor, possession of marijuana, as a Class A misdemeanor, resisting law enforcement, as a Class A misdemeanor, and disorderly conduct, as a Class B misdemeanor. On February 17, 2004, Ronco filed a motion to suppress the evidence obtained during his stop, detention and/or arrest alleging that the stop by Officer Kobitz was illegal. *Appellant's App.* at 105. On May 5, 2004, after an evidentiary hearing, the trial court granted Ronco's motion and dismissed all of the charges against him. *Id.* at 88.

The State filed a Motion to Correct Errors on May 24, 2004, challenging the granting of the Motion to Suppress and the dismissal of all of the charges. *Id.* at 90–92. In its motion the State claimed that even if the marijuana was properly suppressed, the police testimony regarding the resisting law enforcement, battery, and disorderly conduct was still admissible and not excludable under the fruit of the poisonous tree doctrine. *Id.* at 91–92. The State also contended that the trial court did not have the authority to sua sponte order the dismissal of the charges. *Id.* at 92. On June 10, 2004, the trial court ordered that the charges of resisting law enforcement, battery, and disorderly conduct be reinstated. *Id.* at 87.

On January 24, 2005, a jury trial was held on these charges. After deliberations had begun, the jury sent a question to the trial court regarding Final Instruction Number 23, which dealt with the elements of the resisting law enforcement charge. The trial court then sent a message to the jury to reread the instruction and that the answer to their question was contained within the instruction. *Id.* The bailiff returned to the trial court and reported that a juror did not understand the question or the answer and that the jury "felt that they needed to hear it again." *Id.* at 93. This juror also stated that "it was going to be a long night." *Id.* The trial court then found, pursuant to Jury Rule 28, that the jury had reached an impasse and brought the jury into the courtroom and reread Final Instruction Number 22 and 23. After rereading the instructions, the trial court had an impromptu conversation with the jury re-

garding the instruction. The jury found Ronco guilty of resisting law enforcement and disorderly conduct and found him not guilty of battery on law enforcement. Citing double jeopardy concerns, the trial court only entered a judgment of conviction for resisting law enforcement. *Appellant's App.* at 16. Ronco now appeals.

## DISCUSSION AND DECISION

### I. Jury Instruction

Instructing the jury lies within the sound discretion of the trial court. *Kelly v. State,* 813 N.E.2d 1179, 1185 (Ind. Ct.App.2004), *trans. denied.* The trial court's decision will not be reversed unless the instructional error is such that the charge to the jury misstates the law or otherwise misleads the jury. *Id.* Jury instructions are to be considered as a whole and in reference to each other. *Id.* Before a defendant is entitled to a reversal, he must affirmatively show that the erroneous instruction prejudiced his substantial rights. *Gantt v. State,* 825 N.E.2d 874, 877 (Ind.Ct.App.2005).

Ronco contends that the trial court erred in its response to the jury's question regarding Final Instruction Number 23. During his trial and after deliberations had begun, the jury sent a question to the trial court regarding Final Instruction Number 23, which dealt with the elements of resisting law enforcement. The question was whether the State had to prove "points 1 through 3 *and* 1 through 2 or points 1 through 3 *or* 1 through 2." *Trial Tr.* at 92 (emphasis added). The trial court met with the attorneys and told them about the question and stated to them that the answer to the question was "clearly an or." *Id.*

After the trial court found, pursuant to Jury Rule 28, that the jury had reached an impasse, it reread Final Instruction Numbers 22 and 23. Final Instruction Number 22 stated:

The crime of Resisting Law Enforcement is defined by statute, as follows:

(a) A person who knowingly or intentionally:

(1) forcibly resists, obstructs, or interferes with a law enforcement officer, while the officer is lawfully engaged in the execution of his duties as an officer; or

(2) does flee from a law enforcement officer after audibly or visibly identifying himself and ordering the defendant to stop;

commits resisting law enforcement, a Class A Misdemeanor.

*Appellant's App.* at 53. Final Instruction Number 23 stated:

To convict the defendant of Resisting Law Enforcement, the State must have proved each of the following elements: The defendant

1. knowingly or intentionally

2. fled from Patrolman Kobitz, a law enforcement officer

3. after Patrolman Kobitz had, by visible or audible means identified himself and ordered Jason C. Ronco, to stop;

or the defendant

1. knowingly or intentionally

2. did forcibly resist, obstruct or interfere with a law enforcement officer while he was engaged in his duties as a officer.

If the State failed to prove each of the elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of

Resisting Law Enforcement, a Class A Misdemeanor.

*Id.* at 54.

After the trial court reread Final Instructions 22 and 23 to the jury, the following dialog occurred:

The Court: Does that solve your problem or answer your question? Okay, ... do you want to speak?

Juror: Yes, is it each or is it or?

The Court: It is an or. There is [sic] two kinds of fleeing, resisting. Running or fighting or obstructing or not wanting to be held or handcuffed or something. There's [sic] two kinds, they've charged both here. Either he's not guilty of both, guilty of both, or one but not the other. It's conjunctive.

Juror: So it's not one or the other? He's guilty of both or one or the other?

The Court: One or the other. There's [sic] two types of resisting. They charged both here. And either not guilty of both, guilty of both, or guilty of one but not the other.

*Trial Tr.* at 95–96. The juror then indicated that their question had been answered, and the jury returned to deliberations. Both Ronco and the State objected because the trial court only reread two instructions, and the defense additionally objected because of the trial court's further explanation of the instruction. *Id.*

IC 34–36–1–6 governs the procedure for responding to jury questions. It states that if, after the jury retires for deliberations, there is a disagreement among the jurors as to any part of the testimony or the jury desires to be informed as to any point of law arising in the case, the trial court must give the information required in the presence of, or after notice to, the parties or the attorneys representing the parties. Historically, our Supreme Court took the position that once jury deliberations begin, the trial court should not give any additional instructions. *Gantt,* 825 N.E.2d at 876 (citing *Thomas v. State,* 774 N.E.2d 33, 36 (Ind.2002)). The rules were recently changed to allow trial courts to assist jurors in their deliberations to avoid mistrials. *Id.* Prior to the adoption of Indiana's new jury rules, the generally accepted procedure in answering a question of the jury was to reread all of the instructions in order to avoid emphasizing any particular point and not to qualify, modify, or explain its instructions in any way. *Massey v. State,* 803 N.E.2d 1133, 1137 (Ind.Ct.App.2004). However, under the new jury rules, trial courts are given greater flexibility in responding to jury questions. *Id.*

█ In this case, the jury had a question regarding Final Instruction Number 23, which dealt with what elements the State had to prove in order to find Ronco guilty of resisting law enforcement. The trial court initially sent a message back telling the jury to reread the instruction and that the answer to their question was contained within the instruction. The bailiff reported that one juror had stated that he did not understand the question or the answer, so the jury needed to hear the instruction again and that it was going to be a long night. *Trial Tr.* at 93. The trial court then found that the jury was at an impasse based on the juror's "long night" comment. Ronco argues that it was error to find that the jury was at an impasse based on this comment. We agree.

█ "An impasse is defined as 'a position from which there is no escape, a deadlock.'" *Litherland v. McDonnell,* 796 N.E.2d 1237, 1242 (Ind.Ct.App.2003), *trans. denied* (quoting The New Shorter Oxford English Dictionary 1318 (Thumb Index ed.1993)). A deadlock was defined

in *Litherland* as a condition or situation in which no progress or activity is possible; a complete standstill; a lack of progress due to irreconcilable disagreement or equal opposing forces. *Id.* at 1242. There was no evidence in this case to show that the jury had reached an impasse. The jury never stated that they were in a deadlock or a position where no progress could be made. The comment by one juror that "it was going to be a long night" did not establish that the jury had reached an impasse. This comment could have simply meant that the jury would be debating the evidence for a while. Therefore, we find that the trial court erred when it found that the jury had reached an impasse.

Because the trial court found the jury to be at an impasse, it followed Jury Rule 28 [3] and reread Final Instruction Numbers 22 and 23 and spoke to the jury regarding their question about the instructions. We find that it was error for the trial court to engage in this dialog with the jury. Our Supreme Court has stated:

> [O]ur new Indiana Jury Rule 28 urges that trial judges facilitate and assist jurors in the deliberative process, in order to avoid mistrials. Under appropriate circumstances, and with advance consultation with the parties and an opportunity to voice objections, a trial court may, for example, directly seek further information or clarification from the jury regarding its concerns, may directly answer the jury's question (either with or without directing the jury to reread the other instructions), may allow counsel to

briefly address the jury's question in short supplemental arguments to the jury, or may employ other approaches or a combination thereof.

*Tincher v. Davidson,* 762 N.E.2d 1221, 1224 (Ind.2002) (footnote omitted). Because the jury had not reached an impasse, the appropriate circumstances did not exist for the trial court to seek further information or clarification from the jury regarding its question. Additionally, the comments by the trial court occurred extemporaneously and without advance consultation with the parties as to what the trial court would say to the jury. Thus, the trial court erred when it engaged in a conversation with the jury regarding the instructions.[4]

▮ Ronco contends that the trial court also erred when it provided additional comments and explanation of Final Instructions 22 and 23 because they had a prejudicial effect on the jury. We agree. The trial court's answer of "[o]ne or the other" to the juror's question was confusing and could have misled the jury. Even though the trial court went on to state that Ronco could be found either not guilty of both, guilty of both, or guilty of one but not the other, this answer to the juror's question could have misled the jury to believe that they had to find Ronco guilty of either one or the other types of resisting law enforcement. "The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend

---

**3.** Indiana Jury Rule 28 provides:
If the jury advises the court that it has reached an impasse in its deliberations, the court may, but only in the presence of counsel, and in a criminal case the parties, inquire of the jurors to determine whether and how the court and counsel can assist them in their deliberative process. After receiving the jurors' response, if any, the court after consultation with counsel, may

direct that further proceedings occur as appropriate.

**4.** Although the new jury rules are aimed at allowing trial courts to facilitate and assist jurors in the deliberative process, they pose unique challenges, and trial courts should be cautious when they engage in conversations with juries.

the case clearly and arrive at a just, fair, and correct verdict." *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind.2001). Therefore, we find that this instructional error was such that the charge to the jury misstated the law and could have misled the jury. *See Kelly*, 813 N.E.2d at 1185.

 We will not overturn a defendant's conviction if a trial court's error was harmless. *Gantt*, 825 N.E.2d at 879. Harmless error is an error that does not affect the substantial rights of a party. *Id.* Here, the trial court's explanation regarding the resisting law enforcement charge could have reasonably confused and misled the jury to believe that they were required to find that Ronco was guilty of one or the other types of resisting law enforcement and that finding him guilty of neither type was not an option. Under these circumstances, we cannot conclude that the trial court's erroneous instruction was harmless. Therefore, we reverse Ronco's conviction for resisting law enforcement and remand for a new trial on this count.

## II. Admissibility of Evidence

 The admission or exclusion of evidence is a determination entrusted to the discretion of the trial court.[5] *Farris v. State*, 818 N.E.2d 63, 67 (Ind.Ct.App.2004), *trans. denied.* We will reverse a trial court's decision only for an abuse of discretion. *Id.* A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

Ronco argues that the trial court abused its discretion when it allowed the officers' testimony regarding Ronco's actions after his initial stop by Officer Kobitz to be admitted at the trial. He contends that this evidence should have been excluded as "fruit of the poisonous tree" because it was obtained after an illegal stop. Therefore, he claims that because the initial stop was found to be illegal, any evidence of illegal activity after the stop was fruit of the illegal stop and should not have been admitted.

 In *Dennis v. State*, 736 N.E.2d 300 (Ind.Ct.App.2000), this court held that the exclusionary rule did not prohibit police officers from providing evidence pertaining to illegal activity, which included intimidation and disorderly conduct, that occurred even after an illegal arrest as long as the illegal activity is separate from the illegal arrest. *Id.* at 303. In that case, the defendant's arrest for public intoxication was found to be illegal, but the evidence of subsequent crimes committed against the police officers was admissible. In *State v. Howell*, 782 N.E.2d 1066 (Ind. Ct.App.2003), charges, including resisting law enforcement and reckless driving, were found to be improperly dismissed even when the evidence of such crimes occurred after an illegal stop of the defendant's vehicle. *Id.* at 1068. "[A] private citizen may not use force in resisting a peaceful arrest by an individual who he knows, or he has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful." *Id.* at 1067–68.

 In this case, the initial stop of Ronco was found to be illegal because the trial court held that the fact that Ronco was staring at Officer Kobitz did not

---

5. We note that Ronco frames this issue as whether the trial court abused its discretion in denying his motion to suppress. However, Ronco did not seek an interlocutory appeal after the denial of his motion to suppress. Rather, he proceeded with his trial and ob-

jected to the admission of the evidence at trial. Therefore, the issue is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial. *See Packer v. State*, 800 N.E.2d 574, 578 (Ind.Ct.App.2003), *trans. denied.*

amount to reasonable suspicion of criminal activity. However, after Ronco was stopped and Officer Kobitz and Officer Jackson attempted to arrest him, Ronco forcibly resisted the officers' efforts by kicking at them, struggling, and refusing to allow the officers to handcuff him. Therefore, we find that the evidence regarding Ronco's actions, which occurred after the initial illegal stop was properly admitted by the trial court.

Reversed and remanded for proceedings consistent with this opinion.

SULLIVAN, J., and DARDEN, J., concur.