Argued July 18, reversed and remanded September 6, reconsideration
denied October 31, 1978, petition for review denied February 13, 1979

STATE OF OREGON, *Appellant,*

*v.*

CRAIG MICHAEL GAFFNEY, *Respondent.*

(No. DA141770, CA 10820)

583 P2d 582

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Gregory L. Hawkes, Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

The trial court entered an order suppressing evidence on the ground that defendant was illegally stopped by police officers and dismissed harassment (ORS 166.065(1)(a))[1] and criminal mischief (ORS 164.354(1)(b))[2] charges which arose out of defendant's actions after the stop. The state appeals.

Defendant allegedly shoved one of the officers with his hands and fists when the officer attempted to frisk for weapons pursuant to ORS 131.625.[3] He was then arrested for harassment. After a struggle, he was placed in the back seat of a police car. In an apparent attempt to kick out a window, he damaged the inside of the car, which gave rise to the criminal mischief charge. The trial court ruled that the stop was invalid under *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977), and *State v. Brown,* 31 Or App 501, 570 P2d 1001 (1977).

Defendant was stopped by a Portland police officer on surveillance duty near the mayor's home. He was stationed there because threats had been made against the mayor. The officer saw defendant park his car, get out and walk along a sidewalk in the direction of the mayor's house. Defendant stepped off the sidewalk near a hedge and disappeared from view. The officer walked over to the area and saw defendant sitting on

[1] ORS 166.065(1)(a):

"A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he:

"(a) Subjects another to offensive physical contact * * *"

[2] ORS 164.354(1)(b):

"A person commits the crime of criminal mischief in the second degree if:

"* * * * *

"(b) Having no right to do so nor reasonable ground to believe that he has such right, he intentionally damages property of another, or, he recklessly damages property of another in an amount exceeding $100."

[3] ORS 131.625(1):

"A peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other person present."

the front porch of the house next to the mayor's, smoking a cigarette. The officer watched for several minutes. Defendant got up once and went to the door of the house, but did not go in. He sat down again. After a while the door opened and a dog came out. The officer later testified that he assumed the dog belonged to defendant. Nevertheless, he radioed that he had seen a suspicious person and needed help. He was joined by two other police officers. Shortly thereafter, defendant walked with the dog to the sidewalk, where he was confronted by the police. The first officer told defendant to stop because they wanted to talk to him. He refused. One of the others told him to stop, but he again refused. Eventually, an officer moved toward defendant and began an external pat down for weapons. It was then that he allegedly shoved the officer with his hands and fists.

■ We agree that the stop was unlawful under ORS 131.615.[4] The officers had no basis for any suspicion that defendant had committed a crime.

■■ The trial court concluded that the illegality of the stop rendered inadmissible all evidence of subsequent events, including evidence of independent crimes directed toward the officers. With that conclusion we do not agree. A violation of the stop and frisk statutes requires application of the exclusionary rule to evidence—both physical evidence and sensory observations—obtained as a result of the illegal stop or frisk. *State v. Fairley,* 282 Or 689, 580 P2d 179 (1978). The purposes underlying the exclusionary rule would not be well served by the exclusion of evidence of independent crimes directed at officers who illegally stop, frisk, arrest or search. Moreover, the results of such an extension of the exclusionary rule would be intolerable. A person who correctly felt that he had been illegally stopped, for example, could respond with

---

[4] ORS 131.615(1):

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

unlimited violence and under an exclusionary rule be immunized from criminal responsibility for any action taken after the stop. That cannot be an appropriate rule. *People v. Abrams,* 48 Ill 2d 446, 271 NE2d 37 (1971); *State v. Miller,* 282 NC 633, 194 SE2d 353 (1973); *People v. Abruzzi,* 52 AD2d 499, 385 NYS2d 94 (1976). *See also* ORS 161.260.[5] The evidence of the independent crimes allegedly committed in response to the stop was improperly suppressed, and the charges were improperly dismissed when the state was unable to proceed after suppression of the evidence.

Reversed and remanded.

---

[5] ORS 161.260:

"A person may not use physical force to resist an arrest by a peace officer who is known or reasonably appears to be a peace officer, whether the arrest is lawful or unlawful."