Argued and submitted September 15, 1981, reversed and
remanded for a new trial January 25, 1982

# STATE OF OREGON,
*Respondent,*

*v.*

# LONNIE ROSS BURGER,
*Appellant.*

# (No. CR79-1968, CA A21257)

639 P2d 706

William Uhle, Oregon City, argued the cause and filed the brief for appellant.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals his convictions by a jury on charges of resisting arrest and assault in the fourth degree. He contends that the trial court erred (1) in denying his motion to suppress evidence of independent crimes committed upon police officers following an arguably unlawful entry into his home, (2) in denying his motion for acquittal and (3) in refusing to instruct the jury on the defense of self-defense in the language of Uniform Jury Instructions 403.11 and 403.12.

On September 14, 1979, Officer Grady heard a radio report of a theft at the Big O Tire Store and that two male suspects had been seen walking north on Molalla Avenue in Oregon City. Responding to the call, Grady saw defendant and another man walking north on Molalla Avenue approximately two blocks from the store. Grady stopped the men and asked for identification, explaining that he was investigating a recent burglary in the area. Defendant ran.

Grady next saw defendant 15 minutes later in the parking lot of his apartment complex. He again requested that defendant stop, but he walked across the parking lot to his apartment, opened the door and entered. Grady approached the open apartment door and again requested identification. Defendant ordered Grady out of the apartment and slammed the door. Grady then burst through the door, knocking defendant to the ground. A struggle ensued. Officer Behan arrived, and he and Grady subdued and handcuffed defendant. As the officers were leading defendant out of his apartment, he kicked Sgt. Collier, who was assisting them. The officers then took defendant to a patrol car. As they were placing him in the patrol car, he kicked Grady in the face.

Defendant was charged with (1) resisting arrest, by kicking Sgt. Collier, and (2) assault in the fourth degree, by kicking Officer Grady while Grady was attempting to place him in the patrol car.

Defendant first contends that the trial court erred in denying his motion to suppress evidence of independent crimes committed after police had made a warrantless

entry into his home.[1] On similar facts, we have rejected extension of the exclusionary rule to such evidence. *State v. Gaffney,* 36 Or App 105, 583 P2d 582 (1978), *rev den* 285 Or 195 (1979). In *Gaffney,* officers unlawfully stopped defendant. When an officer began an external pat down for weapons, the defendant allegedly shoved the officer with his hands and fists, giving rise to a charge of harassment. When the officers placed the defendant into the back seat of a patrol car, he attempted to kick out a window, damaging the inside of the car, which gave rise to a charge of criminal mischief. We stated:

"* * * The purposes underlying the exclusionary rule would not be well served by the exclusion of evidence of independent crimes directed at officers who illegally stop, frisk, arrest or search. Moreover, the results of such an extension of the exclusionary rule would be intolerable. A person who correctly felt that he had been illegally stopped, for example, could respond with unlimited violence and under an exclusionary rule be immunized from criminal responsibility for an action taken after the stop. That cannot be an appropriate rule. *People v. Abrams,* 48 Ill 2d 446, 271 NE2d 37 (1971); *State v. Miller,* 282 NC 633, 194 SE2d 353 (1973); *People v. Abruzzi,* 52 AD2d 499, 385 NYS2d 94 (1976). *See also* ORS 161.260. The evidence of the independent crimes allegedly committed in response to the stop was improperly suppressed, and the charges were improperly dismissed when the state was unable to proceed after suppression of the evidence." (Footnote omitted.) 36 Or App at 108-09.

We adhered to the *Gaffney* rationale in *State v. Rodriguez,* 37 Or App 355, 357, 587 P2d 487 (1978), *rev den* 285 Or 319 (1979).

■ Defendant attempts to distinguish *Gaffney* and *Rodriguez* on the basis that they involved illegal stops, whereas this case involves an arguably illegal entry into a home. As defendant correctly notes, freedom from intrusion into the home constitutes the core of one of the protections secured by both state and federal constitutions. That important freedom explains the rule requiring that, absent exigent circumstances, police officers must obtain a warrant before entering a home to search or to make an arrest.

---

[1] We assume *arguendo* that Officer Grady"s entry into defendant"s apartment was unlawful.

*See, e.g., Payton v. New York,* 445 US 573, 590, 100 S Ct 1371, 63 L Ed 2d 639 (1980). The issue here, however, is not whether physical evidence obtained because of a warrantless entry should be suppressed, but whether evidence of crimes committed against police officers after they have unlawfully entered a home should be suppressed. We decline to hold that after an unlawful entry evidence of subsequent crimes committed against police officers must be suppressed. Such a rule would produce intolerable results. For example, a person who correctly believed that his home had been unlawfully entered by the police could respond with unlimited force and, under the exclusionary rule, could be effectively immunized from criminal responsibility for any action taken after that entry. *See State v. Gaffney, supra,* 36 Or App at 108-09. We do not believe that either the state or federal constitution compels such a result.

The Supreme Court recently observed:

"* * * We have held that the exclusionary rule of search and seizure should be applied only as broadly as is necessary to accomplish its protective and prophylactic purposes. *State v. Nettles,* 287 Or 131, 597 P2d 1243 (1979). *See State v. Scharf,* 288 Or 451, 461 n. 10, 605 P2d 690 (1980). The device of excluding trustworthy evidence from the factfinding process in order to serve higher purposes 'is a needed, but grudgingly taken medicament; no more should be swallowed than is needed to combat the disease." Amsterdam, Search, Seizure and Section 2255, 112 U Pa L R 378, 389 (1964). * * *" *State v. Quinn,* 290 Or 383, 397, 623 P2d 630 (1981).

Under the circumstances of this case, if the trial court had allowed the motion to suppress, it would have applied the exclusionary rule more broadly than was necessary to accomplish its prophylactic purposes. The trial court properly denied the motion.

■    Defendant next contends that the state failed to disprove his defenses of self-defense and defense of premises and that, therefore, his motion for judgment of acquittal should have been allowed. The test for reviewing the sufficiency of the evidence was articulated by the United States Supreme Court in *Jackson v. Virginia,* 443 US 307, 319, 99 S Ct 2781, 61 L Ed 2d 560 (1979):

"[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

On the resisting arrest charge, there was evidence that at the time defendant kicked Sgt. Collier, defendant was under arrest and was not being subjected to excessive force. Under those circumstances, defendant was not entitled to resist arrest, nor was he entitled to use force in defense of his premises. *See* ORS 161.260; 161.209; *see also, State v. Crane,* 46 Or App 547, 553 n 3, 612 P2d 735, *rev den* 289 Or 903 (1980).[2] Similarly, on the assault charge there was evidence from which the jury could have concluded that at the time of the offense, defendant was not being subjected to excessive force. *See State v. Harris,* 288 Or 703, 721, 609 P2d 798 (1980). Therefore, the motion for acquittal was properly denied.

Defendant also contends that the trial court erred in refusing to give Uniform Jury Instructions 403.11 and 403.12, which explain the nature and scope of the right of self-defense. The trial court instructed the jury: "Resisting arrest is not criminal if the arrest is made by the use of excessive force." The state concedes that defendant was entitled to have his theory of self-defense presented to the jury, because there was evidence from which a rational jury could find that in placing defendant under arrest, the officers used excessive force. The state argues, however, that the instruction given by the trial court adequately informed the jury of the defense.

In contending that the instruction given was insufficient, defendant relies on *State v. Castle,* 48 Or App 15, 616 P2d 510 (1980). Under similar facts, in *Castle* we stated:

"* * * There was evidence here from which the jury might have concluded that the officer used excessive force in getting the defendant into the patrol car against which defendant was entitled to defend himself. From the

---

[2] Defendant"s reliance on *State v. Lindsay,* 388 So 2d 781, 782-84 (La 1980), is misplaced. In *State v. Crane,* 46 Or App 547, 549-52, 612 P2d 735, *rev den* 289 Or 903 (1980), we concluded that no right exists in Oregon to resist an unlawful arrest when excessive force is *not* being applied.

instructions given, the jury could have concluded that defendant was resisting arrest even though they found that the officer was the aggressor and used unreasonable or unnecessary force. The defense of self defense, if established, would have vitiated the resisting arrest charge and would have provided a defense to the assault charge. It follows that failure to give the requested instruction was prejudicial error." (Footnote omitted.) 48 Or App at 19-20.

■ The state attempts to distinguish *Castle* by noting that in that case the trial court instructed the jury only that, with respect to resisting arrest, a person may not use force against an arresting officer whether or not the officer has lawful authority to make the arrest and that in effectuating an arrest an officer may lawfully use reasonable physical force. Under the *Castle* standard, however, the instruction given here did not adequately inform the jury of the theory of the defense. Defendant requested an instruction identical to the one we held should have been given by the trial court in *Castle*. 48 Or App at 18 n 1. The requested instruction would have informed the jury that:

"The defense of self-defense * * * has been raised.

"A person is justified in using physical force upon another person where the physical force was used to defend himself * * * from what he reasonably believed to be the use or imminent use of unlawful physical force upon himself * * *. However, a person may use only that degree of force which he reasonably believed to be necessary for the defense.

"The State must disprove this defense beyond a reasonable doubt."

If established, the defense of self-defense would have vitiated the resisting arrest charge and arguably could have provided a defense to the assault charge. Therefore, failure to give the requested Uniform Jury Instruction 403.11 requires reversal.[3]

---

[3] Uniform Jury Instruction 403.12, also requested and not given, provides:

"Even though a person may use a reasonable degree of physical force of himself (or a third person) there are certain limits on his privilege to do so.

"A. Provocation

"A person is not justified in using physical force upon another person if, with intent to cause physical injury or death to another person, he provoked the use of unlawful physical force by the person.

Reversed and remanded for a new trial on both charges.

"B. Aggression

"A person is not justified in using physical force upon another person if he was the initial aggressor, and he did not withdraw from the encounter. However, the defendant's use of physical force may be justified if you find that he withdrew from the encounter and effectively communicated to the other person his intent to withdraw from the encounter, but the other person nevertheless continued or threatened to continue the use of physical force upon the defendant.

"C. Mutual Combat

"A person is not justified in using physical force upon another person if the physical force involved was the product of a combat by mutual agreement not specifically authorized by law." Uniform Jury Instruction No. 403.12

We are not clear of the exact basis upon which defendant requested the giving of this instruction or what subsection of the instruction he contends should have been given. Nor can we determine whether defendant contends the instruction has application to one or both of the charges against him. On retrial, defendant may clarify his position in this regard. The trial court may then determine whether there is a factual basis for giving the instruction. *See State v. Charles,* 54 Or App 272, 634 P2d 814 (1981), *rev allowed* (1982).