Argued and submitted March 5, reversed and remanded August 29, 1990

# STATE OF OREGON,
*Appellant,*

*v.*

# GALE DOUGLAS JANICKE,
*Respondent.*

(T28468A; CA A60915)

796 P2d 392

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Gerritt J. Vankommer, Hillsboro, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Defendant was charged with resisting arrest, ORS 162.315, assault in the fourth degree, ORS 163.160, harassment, ORS 166.065, failure to perform the duties of a driver when property is damaged, ORS 811.700, and two counts of failure to carry or present a license. ORS 807.570. The charges arose out of an incident in which defendant was involved in a collision with a postal truck and a subsequent encounter with the police at his home. The trial court granted defendant's motion to suppress all evidence obtained by the police after they entered defendant's house on the ground that the entry of the house was unlawful. The state appeals, and we reverse.

On February 3, 1989, an off duty Hillsboro police officer, Sabine, saw what appeared to be an accident. The front end of a truck was in contact with the back end of a postal delivery vehicle, and the drivers were arguing. He displayed his badge to defendant, the driver of the truck, and asked him to back up his truck. He also requested defendant's driver's license. Defendant refused to back up the truck or to show his license. He denied that he had been in an accident and told Sabine that he was a taxpayer and could run into a postal truck at any time, if he wished. He refused to identify himself and left the scene, even though Sabine had asked him to remain. Officers Wright and Dunlap, of the Forest Grove police, soon arrived, and Sabine told them what had happened. A postal supervisor who was there gave the officers defendant's name and address, which he obtained from a nearby dentist's office from where defendant had just been, and the license number of the truck involved. The officers checked the vehicle license number by radio and got the name and address of the registered owner, which was the name that the postal supervisor had given them.

The officers then went to that address and saw defendant standing in the driveway next to the truck. Wright approached defendant and asked to see his license. Defendant stated that he had done nothing wrong and refused to show his license. He then went to the back door of his house, opened it and started talking to someone inside. He started to go into the house, then turned to the officers and said that he needed to go in and "get reinforcements." Wright followed defendant and put his foot in the door as he was closing it. Defendant

told Wright that he could not come in. Sabine and Dunlap, who were behind Wright, asked if they could come in, and defendant consented. All three officers then entered the house, where a struggle occurred, resulting in the charges of assault, harassment and resisting arrest.

The trial court granted defendant's motion to suppress, holding that the entry was unlawful and, therefore, that all evidence obtained in defendant's residence must be suppressed. The only evidence obtained in the residence was the account of the altercation. The trial court held that the only crime that the police may have had probable cause to believe that defendant had committed was failure to carry or present a license, ORS 807.570, and that no further evidence of that crime was necessary. It also held that there were no exigent circumstances to justify the warrantless entry.

We hold that the trial court erred in granting the motion to suppress. Assuming, without deciding, that the entry into the residence was unlawful, we have declined to extend the exclusionary rule to evidence of crimes committed against police officers during what turns out to be an illegal stop or entry. As explained in *State v. Burger,* 55 Or App 712, 716, 639 P2d 706 (1982):

> "The issue here, however, is not whether physical evidence obtained because of [*sic*] a warrantless entry should be suppressed, but whether evidence of crimes committed against police officers after they have unlawfully entered a home should be suppressed. We decline to hold that after an unlawful entry evidence of subsequent crimes committed against police officers must be suppressed. Such a rule would produce intolerable results. For example, a person who correctly believed that his home had been unlawfully entered by the police could respond with unlimited force and, under the exclusionary rule, could be effectively immunized from criminal responsibility for any action taken after that entry. * * * We do not believe that either the state or federal constitution compels such a result."

*See State v. Weiland,* 72 Or App 25, 695 P2d 85, *rev den* 299 Or 32 (1985). The motion to suppress should not have been granted.

Reversed and remanded.