Argued and submitted April 30, affirmed December 12, 2007

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LINDA SUE NEILL,
*Defendant-Appellant.*

Washington County Circuit Court
D041467M; A126766

173 P3d 1262

Anne Fujita Munsey, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender.

Jonathan H. Fussner argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Benjamin R. Hartman, Assistant Attorney General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals from a judgment convicting her of interfering with a peace officer. ORS 162.247(1)(b).[1] She assigns error to the trial court's denial of her motion to suppress evidence and her motion for a judgment of acquittal. We affirm.

The following facts are essentially undisputed. Police officers were dispatched to defendant's apartment after her son called 9-1-1 and reported that he had been involved in a fight with another man (later identified as defendant's boyfriend, Hardy) in the apartment and that he was concerned about defendant's safety because she and Hardy were alone in the apartment. When the officers arrived, defendant opened the door slightly. She had blood on her shirt, her hair was disheveled, and it appeared that she had been crying. There was also blood on the doorjamb, the door itself appeared to be damaged, and the jamb and lock were broken off. One of the officers asked defendant if Hardy was inside the apartment, and defendant said that he was not. The officer then asked if they could look inside for Hardy, but defendant refused and began to shut the door. The officers explained that they needed to enter the apartment to perform a community caretaking welfare check on her because, based on the report from her son, they were concerned about her safety.

The officers entered the apartment and ordered defendant to sit on the couch. Defendant did not comply. She admitted, however, that Hardy was, indeed, in the apartment—specifically, that he was "passed out in the back bedroom," but that "things had been taken care of." The officer told defendant that she needed to call out for Hardy and have

---

[1] ORS 162.247 was amended in 2005. Or Laws 2005, ch 668, § 1. However, because those amendments do not affect our analysis, we refer to the current version of the statute here. It provides, in part:

"(1) A person commits the crime of interfering with a peace officer or parole and probation officer if the person, knowing that another person is a peace officer or a parole and probation officer as defined in ORS 181.610:

"* * * * *

"(b) Refuses to obey a lawful order by the peace officer or parole and probation officer."

him come into the living room. Defendant instead stated that she would go get him, and began to walk into a back bedroom. The officer instructed her not to go into the bedroom, but to sit on the couch and wait while the officers cleared the apartment. Defendant complied, but yelled that Hardy was asleep. Meanwhile, two of the officers located Hardy hiding under the bed and took him into custody.

As they were escorting Hardy out of the apartment, past defendant, defendant began yelling at the officers, jumped up, and ran down the hallway toward the back bedroom. One of the officers repeatedly instructed defendant to sit down and not move, but defendant continued to run toward the bedroom. The officer then attempted to place defendant into an escort hold; she pulled away and yelled obscenities. Despite the officer's attempts to pull her back, defendant dove under the bed. One of the officers testified that she "wasn't sure what [defendant] was reaching for, in my mind, you know, more likely than not, it was going to be a weapon." Defendant eventually pulled a pair of shoes out from under the bed.

Defendant was arrested and charged under ORS 162.247(1)(b) with refusing to obey a lawful order by a peace officer. She moved to suppress all of the evidence resulting from the warrantless entry of her home, citing ORS 133.033, Article I, section 9, of the Oregon Constitution, and the Fourth and Fourteenth Amendments to the United States Constitution. She argued that the officers were not acting pursuant to the community caretaking statute or the emergency aid doctrine, that the officers could not by their own illegal entry create officer safety issues, and that the officers' orders to defendant were not lawful orders because the officers gave them when they were in her apartment unlawfully.

In response, the state argued that the evidence was admissible because the search of the apartment was valid under the community caretaking statute. The state further argued that, even if the search was illegal, evidence of a new crime—in this case, interfering with a peace officer—committed after an illegal search is nonetheless admissible under *State v. Janicke*, 103 Or App 227, 796 P2d 392 (1990).

The trial court declined to rule on the legality of the search, but denied defendant's motion to suppress, based on *Janicke*:

"I reviewed the case law and I'm going to decide this on the simplest grounds that I can, and that is really under the *Janicke* case, and the cases cited therein that even if this were an illegal entry, I'm not required to decide whether it was or not so I won't—it's the type of offense for which evidence of that offense would not be suppressed because it is a—at least allegedly a crime occurring after the entry in which did threaten—potentially threaten the safety of police officers, or appeared to. So, I will deny the motion to suppress."

In response to defendant's request for findings on the lawfulness of the warrantless entry, the trial court further stated,

"I will make as a finding of fact that the officers did not ask [defendant] to step out onto the porch. And it seems to me that if they had asked her to step out onto the porch—first of all, [if] she said yes, then they could have satisfied their questions as to her safety. They didn't have any reason to believe that the third person in the house was injured, so there was no community caretaking issue regarding the third person. And once they satisfied themselves that she was not injured and—or at least not seriously injured, and nobody was pointing a gun at her head and making her speak through this crack in the door that she was okay, that there would have been no reason to go into the house under the caretaking statute. And it seems to me, I haven't analyzed this thoroughly but it seems that the state really can't prove that it was reasonably necessary to go into the house until they [had] shown that they didn't take other less intrusive reasonable steps to accomplish the same ends, which in this case would have included asking her to step out on the porch."

The parties agreed to have the court resolve the merits of the case on the basis of the evidence admitted at the suppression hearing. Defendant moved for a judgment of acquittal, arguing that the officers' orders were not lawful because they had entered the apartment illegally. The trial court denied the motion, without explanation, when it found defendant guilty of the offense of interfering with a peace officer.

■     On appeal, defendant challenges the trial court's denial of both motions.[2] In her first assignment of error, defendant argues that, because the officers' warrantless entry was not authorized by the community caretaking statute and did not fall within the emergency aid exception to the warrant requirement, all evidence that flowed from the illegal entry must be suppressed under the state and federal constitutions.[3] Defendant also contends that the exception to the exclusionary rule relied on by the trial court and articulated in *Janicke* does not apply in this case to render the evidence nonetheless admissible, because defendant's failure to obey the officers' orders was not a crime of violence against the police.

■     In response, the state concedes that, under the circumstances of this case, the trial court erred in relying on *Janicke* to deny defendant's suppression motion. The state instead urges us to affirm the trial court's ruling on the alternative ground that the officers' entry was lawful under the community caretaking statute, ORS 133.033, and the emergency aid exception to the warrant requirement of Article I, section 9, of the Oregon Constitution. For the reasons that follow, we do not accept the state's concession of error and conclude that the trial court correctly ruled that the evidence was admissible under the exception to the exclusionary rule articulated in *Janicke* and related cases. *See State v. Jones*, 129 Or App 413, 416, 879 P2d 881 (1994) (state's concession of error is not binding).

---

[2] Defendant's third assignment of error, that it was plain error for the trial court to enter a conviction under ORS 162.247(1)(b) because that statute is unconstitutionally overbroad, is disposed of by the Supreme Court's recent decision in *State v. Illig-Renn*, 341 Or 228, 142 P3d 62 (2006).

[3] As the state correctly points out, defendant's federal constitutional argument is not preserved. Although defendant cited the Fourth and Fourteenth Amendments to the United States Constitution as relevant "Points and Authorities" in her motion to suppress the evidence, her accompanying memorandum was grounded exclusively in Oregon law, and she did not raise a federal constitutional argument during the hearing below. Therefore, we limit our review to whether the trial court erred, as a matter of law, in admitting the evidence under the Oregon Constitution. ORAP 5.45(1); *see State v. Toste*, 196 Or App 11, 16-17, 100 P3d 738 (2004), *rev den*, 338 Or 57 (2005) (a defendant's arguments under Article I, section 9, of the Oregon Constitution do not preserve federal Fourth Amendment arguments); *State v. Pope*, 150 Or App 457, 463, 946 P2d 1157 (1997), *rev den*, 327 Or 521 (1998) (merely citing the Fourth Amendment in a motion to suppress does not preserve the issue for appellate review).

We first explained in *State v. Gaffney*, 36 Or App 105, 108-09, 583 P2d 582 (1978), *rev den*, 285 Or 195 (1979), our rationale for the exception to the exclusionary rule that is at issue here. In that case, the defendant was charged with harassment and criminal mischief for allegedly shoving a police officer and damaging the inside of a police car after the defendant had been illegally stopped by the police. The trial court concluded that, because the stop was unlawful, evidence of events that occurred after the stop, including evidence that gave rise to the harassment and criminal mischief charges against the defendant, was inadmissible. The state appealed the court's order suppressing the evidence and dismissing the charges. We agreed with the trial court that the stop was unlawful, but held that evidence of the "independent crimes allegedly committed *in response* to the stop" was improperly suppressed and the charges improperly dismissed after the state was unable to proceed without the evidence suppressed. *Id*. (emphasis added). As we explained,

> "[t]he purposes underlying the exclusionary rule would not be well served by the exclusion of evidence of independent crimes directed at officers who illegally stop, frisk, arrest or search. Moreover, the results of such an extension of the exclusionary rule would be intolerable. A person who correctly felt that he had been illegally stopped, for example, could respond with unlimited violence and under an exclusionary rule be immunized from criminal responsibility for any action taken after the stop. That cannot be an appropriate rule."

*Id*.

In *State v. Burger*, 55 Or App 712, 639 P2d 706 (1982), we applied the *Gaffney* rationale in the context of evidence obtained after an arguably unlawful entry by the police into the defendant's home. The defendant in *Burger* was charged with resisting arrest and assaulting a police officer based on his conduct after police officers had made a warrantless entry into his home. We rejected the defendant's attempt to distinguish those circumstances—that is, an intrusion into the home—from the illegal stop implicated in *Gaffney*:

> "As defendant correctly notes, freedom from intrusion into the home constitutes the core of one of the protections

secured by both state and federal constitutions. That important freedom explains the rule requiring that, absent exigent circumstances, police officers must obtain a warrant before entering a home to search or to make an arrest. The issue here, however, is not whether physical evidence obtained because of a warrantless entry should be suppressed, but whether evidence of crimes committed against police officers after they have unlawfully entered a home should be suppressed. We decline to hold that after an unlawful entry evidence of subsequent crimes committed against police officers must be suppressed. Such a rule would produce intolerable results. For example, a person who correctly believed that his home had been unlawfully entered by the police could respond with unlimited force and, under the exclusionary rule, could be effectively immunized from criminal responsibility for any action taken after that entry. We do not believe that either the state or federal constitution compels such a result."

55 Or App at 715-16 (citations omitted). We further concluded that allowing the motion to suppress in those circumstances would result in a broader application of the exclusionary rule "than was necessary to accomplish its prophylactic purposes." *Id.* at 716.

That brings us to *Janicke*. In *Janicke*, the defendant was involved in what appeared to be a traffic accident and refused to identify himself to police or show his driver's license. The officers obtained his name and address and went to the defendant's home. The defendant was standing outside; he again refused to show his license and started to go into the house saying that "he needed to go in and 'get reinforcements.'" 103 Or App at 229. The officers followed him into the house, and a struggle ensued. The defendant was charged with assault, harassment, and resisting arrest. The trial court held that the entry was unlawful and, therefore, that the evidence obtained in the defendant's residence— that is, evidence of the altercation—had to be suppressed. Relying on *Burger*, we reversed, holding that the exclusionary rule did not extend to "evidence of crimes committed against police officers during what turns out to be an illegal stop or entry." *Id.* at 230.

Defendant contends that, because the "overriding rationale" of those cases is to prevent violence against police

officers, and she did not engage in violent action against the officers but "simply ignored their orders to remain seated on the couch," the exclusionary rule exception does not apply and evidence of her disobedience of the officers' orders should have been suppressed. Defendant also invokes *State v. Williams*, 161 Or App 111, 984 P2d 312 (1999), a case in which the defendant was arrested for unlawful possession of a weapon, but, while he was being searched during booking for that arrest, the police discovered marijuana. We concluded that, because the arrest was unlawful, the trial court correctly suppressed evidence of the marijuana. *Id*. at 120. We declined to apply the exception to the exclusionary rule outlined in the *Gaffney* line of authority, noting that "the crucial fact in those cases was that the new crime was directed at the arresting officers, thereby threatening their safety." *Id*. at 119. Because the presence of the concealed marijuana "did not threaten the officer's safety in any way," the rationale underlying the exception was therefore not satisfied. *Id*. at 120.

■    Although the offense at issue in the present case was not a crime "against" or "directed at" a police officer, as was the case in *Gaffney*, *Burger*, and *Janicke*, we do not agree with defendant that the underlying assumption in those cases is that the independent crime must involve physical force or violent action against an officer. Rather, as we indicated in *Williams*, the determining factor is whether the new crime "threatened the officer's safety in any way." *Id*.

Defendant's failure to obey the officers' orders to sit down and not move posed just such a threat. Defendant's interaction with the officers was hostile and unpredictable from the outset: She first denied that Hardy was in the apartment. She then admitted that he was there, but insisted that he was asleep and that she should go get him. She continued to yell at the officers as they discovered Hardy hiding under the bed and attempted to arrest him. It appeared that she was trying to keep the officers apart from Hardy. Finally, as the officers were occupied with trying to move Hardy safely out of the apartment, defendant attempted to run down the hall, away from the officers and into the bedroom where Hardy had just been. Defendant dove for something under

the bed. One officer testified that she thought that defendant was, "more likely than not," reaching for a weapon.

Defendant's actions while the officers were in her apartment reasonably led the officers to be concerned that defendant posed a legitimate threat to their safety and to their ability to maintain control of a potentially dangerous situation. The orders that the officers gave defendant to sit down and not move were reasonable in light of that threat, and defendant's refusal to obey the orders added to the threat.

In that sense, defendant's crime was in line with the type of independent crimes for which we have held that evidence will not be suppressed. Although not involving direct physical force, defendant's failure to obey the officer's orders in this case created a potential risk of harm. That the police may have acted unlawfully in initiating the search did not free defendant to interfere with reasonable directions by the police designed to reduce the risk of violence and maintain safety once the search had commenced. As in *Gaffney* and its progeny, to hold otherwise would be intolerable and would not serve to advance the purposes underlying the exclusionary rule. Accordingly, even assuming that the officers entered defendant's home unlawfully, the trial court correctly admitted evidence of her refusal to obey the officers' orders to stay seated and not move.

■ We turn to defendant's second assignment of error, in which she contends that the trial court erred in denying her motion for a judgment of acquittal on the ground that the orders with which defendant refused to comply were not "lawful" orders within the meaning of ORS 162.247(1)(b) because the officers were in her home illegally. In our view, there is no principled distinction to be drawn between allowing the admission of evidence of a defendant's refusal to obey an order of the police under the circumstances described above and prosecuting the offense based on that evidence. If, as we have just held, evidence of defendant's refusal to obey the order is not subject to suppression on the ground that the entry was unlawful, then, under the same principle, the order itself cannot be said to be unlawful for the purpose of precluding prosecution for failure to obey it.

*State v. Rodinsky*, 60 Or App 193, 653 P2d 551 (1982), supports that conclusion. There, we upheld the denial of a motion for judgment of acquittal under a similar statute, *former* ORS 487.100, *repealed by* Or Laws 1983, ch 338, § 978,[4] when the defendant failed to obey an order given in the course of an arguably unlawful traffic stop. Relying on *Burger* and *Gaffney*, we held:

> "Assuming, for purposes of discussion, that the stop was unlawful, the officer nevertheless had authority to order defendant to return to her car. Even if the traffic stop was illegal, that did not immunize [defendant] from the consequences of her subsequent conduct and did not deprive the officer of the authority to respond to those actions by appropriate orders. The lawfulness of the order disobeyed is to be judged independently of the validity of the initial police-citizen confrontation. The court did not err in denying the motion on that ground."

*Rodinsky*, 60 Or App at 196 (citations omitted). We adhere to our reasoning in *Rodinsky*, and conclude that the trial court correctly denied defendant's motion for a judgment of acquittal.

Affirmed.

---

[4] That statute provided, in part:

"(1) A person commits the offense of failing to obey a police officer if he refuses or fails to comply with any lawful order, signal or direction of a police officer displaying his star or badge and having lawful authority to direct, control or regulate traffic."