Argued and submitted September 12, 2022, affirmed June 14, 2023

In the Matter of M. T. F.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

M. T. F.,
*Appellant.*

Lane County Circuit Court
20JU07068; A175638

532 P3d 913

Youth, M, appeals from a judgment adjudicating her delinquent for assaulting a public safety officer, ORS 163.208. M argues that the juvenile court erred by (1) denying her motion to suppress evidence, and (2) adjudicating her delinquent. She raises an additional argument in her reply brief, challenging the juvenile court's ruling, in light of the recent decision in *State v. Owen*, 369 Or 288, 505 P3d 953 (2022), that the state did not have to prove any mental state for the result element of "physical injury." *Held*: The juvenile court did not err by denying M's motion to suppress or by adjudicating her delinquent. The juvenile court did err, in light of *State v. Owen*, by failing to require that the state prove any mental state with respect to the physical injury element of the crime. However, that error was harmless.

Affirmed.

Debra E. Velure, Judge.

Erica Hayne Friedman argued the cause and filed the opening brief for appellant. Also on the opening brief was Youth, Rights & Justice. Christa Obold Eshleman and Youth, Rights & Justice filed the reply brief.

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

Pagán, J., concurring.

**MOONEY, J.**

Youth, M, appeals from a judgment adjudicating her delinquent for assaulting a public safety officer. ORS 163.208.[1] M asserts two assignments of error in her opening brief, contending that the juvenile court erred by denying her motion to suppress evidence, and by adjudicating her delinquent for an act that, if committed by an adult, would constitute assaulting a public safety officer under ORS 163.208. We conclude that the juvenile court did not err in denying the motion to suppress or by adjudicating M delinquent. We affirm.

We review the denial of a motion to suppress for legal error. *State v. Oxford*, 311 Or App 1, 7, 488 P3d 808 (2021). "[W]e are bound by a trial court's factual findings, if the record contains evidence to support them." *State v. Serrano*, 346 Or 311, 326, 210 P3d 892 (2009). If the court did not make an express factual finding on a pertinent issue, we presume it decided the disputed facts in a manner consistent with its ultimate conclusion, as long as there is some evidence in the record to support that conclusion. *Oxford*, 311 Or App at 3. We draw the facts from the record in accordance with the applicable standard of review.

On December 9, 2020, members of the Eugene Police Department responded to a report that a person was overdosing on drugs inside a tent at a city park. Officers Peckels and Vinje arrived at the park first, in full uniform. Several individuals approached Peckels, led him to the tent, and told him there was a female inside. Peckels testified that in suspected overdose situations, police must render the area safe before medics may enter, and, in this case, he believed medics would soon be there. Officers Cardwell and McCartney responded soon after.

As Peckels approached the tent, through the open tent flap he saw M laying on her back with her arm over her face, her teeth were chattering, and she was visibly

---

[1] ORS 163.208, as relevant, states:

"(1)  A person commits the crime of assaulting a public safety officer if the person intentionally or knowingly causes physical injury to the other person, knowing the other person to be a peace officer *** and while the other person is acting in the course of official duty."

trembling, which he understood to be early signs of an over-dose. A medical volunteer with Occupy Medical was with M in the tent when Peckels arrived and left when Peckels indicated that medics were on their way. Peckels put one foot in the tent and announced "Eugene Police" before asking M her age. He testified that M did not reply or acknowledge him, and that when she did speak, she slurred her words. Peckels communicated with the en route medics that M was conscious, breathing, and speaking.

Peckels told M that medics were on their way, and he asked her what she had taken. M responded that she had taken heroin, although she did not know how much she had taken. Peckels testified that he believed that M was experiencing a medical emergency. He stood ready to administer Narcan if M became unresponsive. M began telling Peckels to "go away" and leave her alone. McCartney had joined Peckels in the tent, and they explained to M that, in order to ensure her safety, the officers would not leave until medics arrived. M began kicking at Peckels. Peckels, McCartney, and Vinje physically restrained M at that point. M screamed for the officers to let go of her and to leave her tent. The officers repeatedly explained that they needed to stay with M until the medics arrived. Peckels exited the tent to speak with the medics while McCartney and Vinje stayed with M. A sergeant outside the tent directed McCartney and Vinje to exit the tent and M continued to yell at McCartney to leave. McCartney responded to M saying: "I am. You're not going to kick me in the process, okay?" M mocked McCartney at that point and then, after McCartney released her, M kicked McCartney several times in the knee. Approximately four minutes elapsed from the time the officers arrived on scene to the time that McCartney and Vinje left M's tent. Eventually, M was transported to the hospital by medics.

The state filed a petition alleging that M was within the juvenile court's jurisdiction for acts that, if committed by an adult, would constitute assaulting a public safety officer under ORS 163.208, a Class C felony. The petition alleged that M unlawfully and knowingly caused physical injury to McCartney, who M knew to be a public safety officer, while McCartney was acting in her official duty. Prior to trial, M filed a motion to suppress all evidence obtained

from the officers' presence in her tent, which the trial court denied after a hearing. At trial, at the close of evidence, M requested a jury instruction that assigned a mental state to the result element of "physical injury," but the juvenile court ruled that the "knowing" mental state did not apply to physical injury and instead required "that the person act[] with an awareness that her conduct was assaultive." The juvenile court then found that the state had proved the allegations of the petition beyond a reasonable doubt and concluded that M was within its jurisdiction.

In her first assignment of error, M asserts that the juvenile court erred by denying her motion to suppress "all evidence" resulting from the warrantless entry into her tent. She had argued to the juvenile court that no exception to the warrant requirement applied and, therefore, the evidence was obtained in violation of her Article I, section 9, rights.[2] The juvenile court denied the motion to suppress. We understand the juvenile court to have found that the emergency aid exception applied to any argument about whether the officers needed a warrant to enter the tent, and that the court determined that the officers' intent was consistent with aiding M, as opposed to searching the tent for evidence of a crime. On appeal, both parties focus their arguments almost entirely on the emergency aid exception.

According to the Supreme Court,

> "an emergency aid exception to the Article I, section 9 warrant requirement is justified when police officers have an objectively reasonable belief, based on articulable facts, that a warrantless entry is necessary to either render immediate aid to persons, or to assist persons who have suffered, or who are imminently threatened with suffering, serious physical injury or harm."

*State v. Baker*, 350 Or 641, 649, 260 P3d 476 (2011) (footnotes omitted).

It is the state's burden to prove each element of the emergency aid exception and, additionally, to prove that the

---

[2] Article I, section 9, of the Oregon Constitution provides, in relevant part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure ***."

particular emergency did not dissipate and, thus, render the exception inapplicable at any point. *State v. Garcia*, 276 Or App 838, 850, 370 P3d 512 (2016). M argues first that the state failed to prove that the officers had an objectively reasonable belief that warrantless entry into her tent was necessary to render immediate aid. She contends that officers actually entered her tent to determine *whether* there was an emergency, not to administer aid, because at the time they entered the tent a medical volunteer was present, and Peckels had reported that M was conscious and speaking. M further argues that the state failed to prove that the emergency aid exception applied to McCartney's entry, even if McCartney believed M was experiencing a medical emergency, because it failed to prove why McCartney's presence, in particular, was necessary to aid M in her emergency. Second, M argues that the officers' belief was not objectively reasonable, because nothing in the record supports a finding that M was in a condition that the officers could assist with by entering the tent.

The emergency aid exception to the warrant requirement applied here, and we reject M's arguments to the contrary. There is sufficient evidence in the record to support the conclusion that the officers subjectively believed that their entry into M's tent was necessary to render immediate aid to her and, further, that their belief was objectively reasonable. As we have described, the officers arrived at the scene within minutes of each other in response to a 9-1-1 call expressing concern that someone may have overdosed. They were taken directly to M's tent where they observed M exhibiting early signs of a drug overdose. Moreover, the presence of a medical volunteer did not render the officers' intervention unnecessary. That the officers took charge of the scene when they arrived is simply evidence that the emergency response process was underway. M's need for emergent care was transitioned from a medical volunteer to medical professionals through the assistance of law enforcement officers. The officers stood ready to administer Narcan if that became necessary before the medics arrived. The record supports a conclusion that the officers had an objectively reasonable belief that their entry into the tent was necessary to render M immediate aid.

M argues, alternatively, that even if the offi-
cers' initial entry into the tent was justified, they unlaw-
fully remained after any emergency had dissipated. The
record does not support that argument. The video footage
confirmed that the officers were in the tent for about four
minutes. In that time, they entered her tent, observed M's
physical condition, and, to the extent they could, interacted
with M. After the medics arrived, M was transported to the
hospital. The emergency did not dissipate. The warrantless
entry was justified during the entire four-minute period.[3]

In her second assignment of error, M asserts that
the juvenile court erred in adjudicating her delinquent for
acts that, if committed by an adult, would constitute assault-
ing a public safety officer under ORS 163.208. The parties'
arguments on this assignment of error have evolved during
the course of this appeal as a result of the Supreme Court's
decision in *State v. Owen*, 369 Or 288, 505 P3d 953 (2022).
In her opening brief, filed before the decision in *Owen*, M's
argument focused on the sufficiency of the evidence to dis-
prove her claim of self-defense.

By the time the state filed its response brief, the
Supreme Court had decided *Owen*. The state acknowledged
that M had preserved in the juvenile court an argument
that the court was required to find that M acted with at
least criminal negligence with respect to whether her con-
duct would cause physical injury. In view of that, the state,
in addition to responding to M's argument that the evidence
was insufficient to disprove self-defense, acknowledged that
the evidence had to be sufficient to support a finding "that
[M] was at least criminally negligent as to the fact that her
actions could cause McCartney to suffer physical injury—
a requirement that the Oregon Supreme Court recently
addressed in *State v. Owen* \*\*\*, which overruled, in part,
*State v. Barnes*, 329 Or 327, 986 P2d 1160 (1999)." The state
further acknowledged that the juvenile court had concluded
that, under *Barnes*, it did not need to decide whether M

---

[3] Because we determine that the officers were not, at any point, in M's tent in
violation of Article I, section 9, we do not reach M's argument that evidence of her
conduct is presumptively tainted and inadmissible under the exclusionary rule,
which requires the suppression of evidence discovered from illegal police conduct.

had a culpable mental state. Noting that defendant had not assigned error to that determination, the state nonetheless acknowledged that it was erroneous under *Owen*, and then argued that the error was harmless because the juvenile court's comments on the record demonstrate that it would nevertheless have found that M acted with the necessary culpable mental state.

In reply to the state's concession that the juvenile court had plainly erred in its application of the law in light of *Owen*, M argued that the proper course is to remand to the juvenile court to apply the correct legal standard. M also disputed the state's contention that the error was harmless. In sur-reply, the state argued that we should not consider M's contention about the court's erroneous conclusion regarding the culpable mental state requirement recognized in *Owen*, because M had not assigned error to that determination in the opening brief but had, instead, raised it on reply. The state acknowledged that it had conceded the legal error in its answering brief when it addressed the sufficiency of the evidence to support M's adjudication and also repeated its argument that any error was harmless.[4]

We begin with whether there was sufficient evidence presented by the state to disprove self-defense. When reviewing a challenge to the sufficiency of the evidence, we review whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). When self-defense is raised as an affirmative defense, the state must disprove its applicability beyond a reasonable doubt. *State v. Boyce*, 120 Or App 299, 305-06, 852 P2d

---

[4] Typically, when a material change in the law occurs after the opening brief is filed, an appellant who wishes to raise a new assignment of error or a distinct new argument should move to file an amended opening brief or a supplemental brief, which, among other things, ensures that the respondent will have a full opportunity to respond to both the request and any new briefing that is allowed. *See Kragt v. Board of Parole*, 325 Or App 688, 529 P3d 1019 (2023). However, as we explain more below, in the particular and unique circumstances of this case, we deem it appropriate to make an exception to the well-established rule that "an issue raised for the first time in an appellant's reply brief generally will not be considered on appeal." *State v. Murga*, 291 Or App 462, 468, 422 P3d 417 (2018); *see also* ORAP 1.20(5) ("For good cause, the court on its own motion or on motion of any party may waive any rule.").

276 (1993). The use of physical force on another person is justified when it is reasonably necessary to defend against "the use or imminent use of unlawful physical force." ORS 161.209. In her second assignment of error, M asserts that the state failed to prove that she lacked a reasonable belief that her use of force against McCartney was necessary to defend herself from what she reasonably believed was the infliction of unlawful force on her person. We do not agree.

When Peckels entered M's tent, he announced himself as an officer. The officers who were present were in full uniform. M appeared to become more coherent over the course of the four-minute interaction, as she began to make direct eye contact with the officers and to verbally respond to them. Right before McCartney released M so that she could exit the tent, McCartney specifically warned M not to kick her, which M verbally acknowledged, albeit by mocking her, and as soon as McCartney released M, M kicked her several times. There was no objectively reasonable basis for M to believe that she needed to use force to defend herself against the use of physical force by McCartney. To the contrary, the officers were leaving M's tent. They told her they were leaving, and they left. That McCartney warned M not to kick her as McCartney prepared to leave the tent does not change the fact that she was leaving with the other officers. There was no reasonable basis for M to believe that McCartney would use unlawful force against her. A rational factfinder could, on this record, have concluded that, in addition to meeting its burden of proving the elements of the charged crime, the state also met its burden to disprove M's defense, all beyond a reasonable doubt.

We turn to the *Owen* issues. Although M did not squarely raise them in the opening brief, we consider them because, as the state forthrightly acknowledged in its answering brief, the issues are preserved and, in view of *Owen*, the court erred insofar as it concluded that a culpable mental state did not apply. The situation is somewhat akin to that in *State v. Brown*, 310 Or 347, 800 P2d 259 (1990), in which the Supreme Court considered—and corrected— an error that was both unpreserved and unassigned, when the state brought the error to the court's attention. 310 Or at 355. The main difference between this case and *Brown* is

that here the assigned error was preserved in the juvenile court.[5]

As noted, the parties' arguments frame two *Owen* issues. The first is whether the evidence is legally sufficient to permit a finding that M was criminally negligent with respect to whether her conduct would cause physical injury. Our review of the record confirms that it is. The second issue, given the state's concession, is whether the court's legal error in concluding that a culpable mental state did not apply requires reversal. We examine the impact, if any, that the error may have had by focusing "on whether the error was harmless, that is, whether there is little likelihood that it affected the verdict." *State v. Stone*, 324 Or App 688, 693-94, 527 P3d 800 (2023). Here, we agree with the state that the error was harmless beyond a reasonable doubt. In an extensive conversation between the court and counsel, the juvenile court stated that it would not apply a "knowing" standard to the "physical injury" element, but that it would instead apply this standard: The state must prove "that the person act[ed] with an awareness that her conduct was assaultive." Had the juvenile court considered the state's evidence on the physical injury element by applying a criminally negligent mental state standard, it would likely have reached the same result. The court would have viewed the evidence to determine whether the state proved that M had "fail[ed] to be aware of a substantial and unjustifiable risk *** of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10). "Given that the [court] found that [M] acted with an awareness that [her] conduct was assaultive in nature and that [her] assaultive conduct *** was committed with sufficient force to cause physical injury[,] *** there is little likelihood that it would have concluded that [M] was not at least negligent with respect to the risk that" physical injury could result. *State v. Tellez-Suarez*, 322

---

[5] As both parties acknowledge, and as the record reflects, the issue of what mental state, if any, is required for the physical injury element was thoroughly briefed and argued in the juvenile court. M argued that *State v. Barnes*, 329 Or 327, 986 P2d 1160 (1999), should be overruled, and *Owen* has since done just that. There is no preservation issue.

Or App 337, 339, 519 P3d 561 (2022) (so holding in similar factual context).

In making its findings, the juvenile court relied heavily on the body camera footage from the officers and described the moment before M kicked the officer in the video as "revealing" as to M's mental state. There is little likelihood that the juvenile court would have concluded that M was not at least negligent with respect to the risk of injury given its conclusion that M knowingly engaged in assaultive conduct. The error, therefore, does not require reversal.

Affirmed.

**PAGÁN, J.,** concurring.

Focusing on the emergency aid exception to the warrant requirement in Article I, section 9, of the Oregon Constitution, the majority opinion correctly affirms the juvenile court's denial of the motion to suppress. I agree that the emergency aid exception applied. I write separately to dispel any suggestion that if that exception did not apply, then the juvenile court should have granted the motion. By the very nature of the charge against the youth, which resulted from a decision by the youth to engage in conduct threatening an officer's safety, the motion to suppress could have been denied whether or not the exception applied.

In the juvenile court and on appeal, the state argued, as an alternative ground for denying the motion to suppress, that the youth's decision to assault a police officer "attenuated the taint from any unlawful police conduct." When ruling on the motion to suppress, the juvenile court referred to the attenuation argument. It denied the motion to suppress, at least in part, based on its conclusion that it could not find that the accused crime of assaulting a police officer was "in any way a result of a warrantless search or search at all."

The juvenile court's reasoning in support of its ruling is somewhat unclear, but the juvenile court could be interpreted to have accepted the premise that, had the youth demonstrated that the officers entered the tent illegally, then the motion to suppress could have been granted.

But such a framing ignores an important point that we have made repeatedly in our courts, using either the federal or Oregon constitutions: New crimes against officers or that threaten their safety fall within a clear exception to the exclusionary rule. In *State v. Suppah*, 358 Or 565, 576, 369 P3d 1108 (2016), the Supreme Court noted that "the state and federal courts consistently have held that a defendant's decision to commit a new crime in response to an unlawful seizure ordinarily will attenuate the taint of the seizure." For example, "[a] decision to strike an officer in response to an unlawful arrest or to offer a bribe does not normally follow from the illegality, and the formation of the mental state necessary to give rise to those criminal acts provides further assurance that those acts are independent of the illegality that preceded them." *Id.* at 579.

In my view, had the state even *conceded* illegality on the part of the officers, the facts of this case fit squarely within the attenuation line of cases in Oregon which stand for the specific proposition that the illegality of a stop or entry does not render inadmissible evidence of new crimes directed at police officers or threatening their safety. *See State v. Bistrika*, 261 Or App 710, 714-16, 322 P3d 583, *rev den*, 356 Or 397 (2014), *cert den*, 577 US 828 (2015) (affirming denial of defendant's motion to suppress evidence of what occurred after an emergency had dissipated because the evidence concerned conduct that threatened officer safety); *State v. Neill*, 216 Or App 499, 508, 173 P3d 1262 (2007), *rev den*, 344 Or 671 (2008) ("That the police may have acted unlawfully in initiating the search did not free defendant to interfere with reasonable directions by the police designed to reduce the risk of violence and maintain safety once the search had commenced."); *State v. Williams*, 161 Or App 111, 119, 984 P2d 312 (1999) (The exclusionary rule protects privacy interests but that purpose would not be served by suppressing evidence of new crimes "directed at the arresting officers, thereby threatening their safety."); *State v. Janicke*, 103 Or App 227, 230, 796 P2d 392 (1990) ("Assuming, without deciding, that the entry into the residence was unlawful, we have declined to extend the exclusionary rule to evidence of crimes committed against police officers during what turns out to be an illegal stop or entry.").

As we stated so clearly in *State v. Burger*, 55 Or App 712, 716, 639 P2d 706 (1982):

> "The issue here, however, is not whether physical evidence obtained because of a warrantless entry should be suppressed, but whether evidence of crimes committed against police officers after they have unlawfully entered a home should be suppressed. We decline to hold that after an unlawful entry evidence of subsequent crimes committed against police officers must be suppressed. Such a rule would produce intolerable results. For example, a person who correctly believed that his home had been unlawfully entered by the police could respond with unlimited force and, under the exclusionary rule, could be effectively immunized from criminal responsibility for any action taken after that entry."

*See State v. Gaffney*, 36 Or App 105, 108-09, 583 P2d 582 (1978), *rev den*, 285 Or 195 (1979) (providing similar analysis in a case involving an illegal stop). Based on that line of cases, which survived the transition from the federal exclusionary rule to adoption of our rights-based approach under Article I, section 9, there can be no doubt that the juvenile court correctly denied the motion to suppress whether or not the emergency aid exception applied.

Accordingly, I respectfully concur.